JOSEPH BOYARSKY, Respondent, *v.* G. A. ZIMMERMAN CORPORATION, Defendant, Impleaded with HARRIS STRUCTURAL STEEL Co., INC., Appellant.

First Department, March 16, 1934.

*Arthur K. Wing* of counsel [*Clayton J. Heermance* with him on the brief; *Hulbert & Heermance*, attorneys], for the appellant.

*Fred P. Harrington* of counsel [*Philip Jacobson* and *Joseph Silber*, attorneys], for the respondent.

MARTIN, J. In this action the plaintiff recovered damages for personal injuries sustained while employed as a plumber's helper by Alfred David, Inc., a subcontractor doing the plumbing work on a building in the course of construction, known as the Hollywood Theatre at Broadway and Fifty-first street, Manhattan. The Harris Structural Steel Co., Inc., the defendant, appellant, was a subcontractor doing all the structural steel work on the building operation and the defendant G. A. Zimmerman Corporation was the general contractor.

On October 9, 1929, the plaintiff was working in the basement of the building. Directly overhead the appellant was erecting structural steel, riveting beams and girders. The appellant's employees were engaged in their work about thirty-five feet above the street level which in turn was about seventeen to twenty feet above the basement floor. No other subcontractors were present in the immediate locality.

The witnesses for the plaintiff testified that above the basement floor and underneath the place where the appellant's men were working, the steel framework of the first floor had been planked over by the defendant appellant; the planks were not fastened and between them were spaces of various sizes up to about two and a half inches. At about twenty minutes after four in the afternoon while the plaintiff was working directly beneath the steel workers, the plaintiff's witnesses say there was a crash as a bolt struck the planking on the first floor and then fell through one of the openings between the planks and struck the plaintiff on the head. It is

the contention of the plaintiff that the employees of the appellant were the only workmen above him and that it was a bolt such as they were using that fell from above, then through the open space and injured him.

Many sharp issues of fact were presented upon this trial. Evidence was produced by the appellant which contradicted that presented by the plaintiff and facts were testified to which required that the case be submitted to a jury, the verdict of which should not be disturbed unless prejudicial errors are shown.

It is urged by the appellant that the court's refusal to charge certain requests constituted reversible error; that the jury, as a matter of law, could not have found against the appellant on the testimony unless the doctrine of *res ipsa loquitur* is relied upon and the appellant claims that it is not applicable; that the verdict is against the overwhelming weight of the evidence; that the court erred when it refused to allow motion pictures of the plaintiff to be exhibited to the jury and also erred in excluding the testimony of a fellow employee of the plaintiff named Birnbaum.

The respondent claims that the court properly charged the jury; that it was not error to deny the requests of the appellant; that the verdict was justified as a matter of law and is in complete accord with the testimony and amply sustained and justified by the evidence; that the court properly refused to permit motion pictures to be exhibited to the jury and properly excluded the testimony of a fellow employee of the respondent.

Alfred David, the president of the corporation employing the plaintiff, was plaintiff's principal witness and was very much interested in the result of this litigation. He testified that the bolt which struck the plaintiff was about two and a half inches long and an inch and a quarter across the head and that the crack in the planking, through which it fell, was about two inches wide. The witness Felton Pinner, an engineer employed by the defendant Zimmerman Corporation, testified that the bolt he saw on the ground nearby was a four-inch bolt and that it had on it a washer two inches wide. The appellant claims that the bolt could not have fallen from a height of thirty to thirty-five feet and gone through a two-inch space and struck the plaintiff, and that the judgment, therefore, is against the weight of the evidence and contrary to the physical facts.

As we have pointed out, the plaintiff's case, to a great extent, rested upon the testimony of Alfred David. Several incidents in the record with reference to both his testimony and conduct rendered it of very doubtful value. It was disclosed that the corporation of which he was president had no workmen's compensation

insurance and that within twenty minutes after the happening of the accident he applied for such a policy and arranged to have it go into effect the following day. It was also shown that several days later he filed a report of this accident stating that it took place on October tenth, the day after it really occurred. This was evidently done in order to have it appear, if a claim were made, that the accident occurred at a time when the firm was covered by compensation insurance.

The defendants sought to show on this trial that the plaintiff's witness had made a statement to the effect that he had no insurance and that he was in a difficult situation. This testimony offered by Michael Birnbaum, an employee of Alfred David, Inc., and the foreman over the plaintiff, was rejected. Such testimony was clearly admissible to impeach the testimony of David, especially in view of the fact that the witness had a very substantial reason for testifying as he did with respect to the manner in which the plaintiff was injured.

To disprove the plaintiff's testimony as to his physical condition the appellant offered in evidence certain moving pictures taken in Bridgeport, Conn., eleven months after the accident. The pictures were taken without the knowledge of the plaintiff and the appellant argues that they show that the plaintiff's claim that he was physically incapable of working was untrue. The reason advanced by the court for refusing to allow the motion pictures in evidence was not sufficient to warrant their rejection. The appellant says that motion pictures were admitted in evidence and permission granted for the projection of pictures in the Federal court and also in a recent case in the Supreme Court, First Department, which latter case was settled before the trial was concluded. The appellant argues that if a still photograph of the plaintiff is admissible there is no reason for rejecting a moving picture showing the plaintiff walking along the public highway carrying a parcel or bundle. A sharp issue of fact involving the physical condition of the plaintiff having been presented on the trial, the so-called moving pictures were very material on that point.

The admissibility in evidence of moving pictures has been before the courts of this State several times and there appears to be very decided and divergent views with reference to their admission in evidence.

In view of the claim of the plaintiff that he was totally disabled and unable to work or earn a living at any useful employment this case is a striking illustration of an instance where moving pictures are not only admissible but very important. It may be that there are many cases where moving pictures should not be allowed in

evidence. In no case should they be admitted unless a proper foundation has been laid therefor. In most cases the question should be left largely to the discretion of the trial judge. If a trial is to be unduly delayed by exhibiting moving pictures the court may very properly refuse to permit such a delay. If moving pictures are sensational only and unnecessary the court should refuse to permit such evidence, particularly where the facts may be described or the evidence submitted in another form and thus avoid the delay and difficulty which will result from their introduction. If their use is solely for the purpose of advertisement or in an effort to obtain publicity they should not be allowed in evidence.

Several cases have been cited where evidence of moving pictures has been properly rejected. In these cases the purpose was shown to be merely sensational. Where there is no need of such pictures, as in several of the cases adverted to, the trial court is within its right in rejecting such testimony.

In the present case the defendant, appellant, properly points out that the pictures taken of the plaintiff, who contends that he received very severe injuries, will show that he went to live in another city and there evidently conducted himself as a perfectly well man instead of the invalid which he claimed to be. It is argued that these moving pictures should be shown to the jury so that it may intelligently pass upon the question whether the condition claimed to exist is real or feigned.

The well-known progress being made in the moving picture world has resulted in great accuracy in depicting the true conditions sought to be shown. The mechanical means of perfecting such pictures has become so general that it may be necessary in the near future to frequently permit their introduction in evidence. In many cases the pictures may not only have a bearing upon the facts but may be absolutely decisive of the issues involved in the action. Their remarkable accuracy is now generally acknowledged through their constant use as a means of recording and publishing news items of interest to the public, and for that purpose they are featured daily in many of the moving picture theatres of the world.

While it is true that in *Gibson* v. *Gunn* (206 App. Div. 464) the introduction of moving pictures was prohibited, that case illustrates the fact that there may be a great abuse of this form of evidence if it is permitted when wholly unnecessary or when simply cumulative. It may be, as the court said, that to admit such a picture in evidence would bring " before the jury irrelevant matter, hearsay and incompetent evidence " and tend " to make a farce of the trial." This would be particularly true if a dialogue or conversation were permitted at the time the moving picture is presented.

In *Massachusetts Bonding & Insurance Co.* v. *Worthy* ([Tex. Civ. App.] 9 S. W. [2d] 388) the court considered a similar proposition and refused to allow moving pictures in evidence upon the ground that such pictures are so very deceptive that they can be presented in a manner to exaggerate the conditions which are sought to be presented to the jury. Of course, all of the necessary precautions should be taken to see that the proper foundation is laid for the introduction of such a moving picture and if there is any exaggeration it may be pointed out by the court or the moving picture wholly rejected.

In *State* v. *United Railways & Electric Co.* (162 Md. 40; 159 Atl. 916) the court said: " When moving pictures might and might not be used advantageously and properly in placing the facts before juries is a question the answer to which must vary with one case and another, and we think the decision in each case must be left largely to the judgment and discretion of the presiding judge, without any restricting general formula laid down to control him."

A preliminary examination by the trial judge may be necessary in some cases to determine the admissibility of such evidence. In *Field* v. *Gowdy* (199 Mass. 568; 85 N. E. 884), RUGG, J., writing for the court, said: "A photograph has no higher character as evidence than the experiment itself. Whether the conditions were sufficiently similar to make the observation of any value in aiding the jury to pass upon the issue submitted to them was primarily for the trial court to determine as a matter of discretion. His decision in this respect will not be interfered with unless plainly wrong."

In *Everson* v. *Casualty Co. of America* (208 Mass. 214; 94 N. E. 459, 461) the court said: " The general rule respecting the admission of photographs, plans and models is that whether they are to be received or not is a preliminary question resting largely, though not entirely, in the discretion of the trial judge, whose duty is primarily to determine whether there is sufficient similarity between what is offered and the original which is the subject of inquiry to make it of any assistance to the jury in passing upon the issue before them. While the discretion of a trial judge in this regard is not unlimited, his action will not be revised unless it appears to have been plainly wrong or in disregard of some rule of law governing the rights of the parties. As was stated by Chief Justice GRAY in *Blair* v. *Pelham*, 118 Mass. 420: 'A plan or picture, whether made by the hand of man or by photography, is admissible in evidence, if verified by proof that it is a true representation of the subject, to assist the jury in understanding the case."

In 2 Wigmore on Evidence (2d ed.), page 108, section 798, the matter is very fully considered and it is there stated: " No general

rule can be laid down as to the kinds of occurrences, artificially reconstructed, in which the moving picture would have a special risk of misleading.

" (b) But where the moving picture is taken without artificial reconstruction, *i. e.*, at the time and place of the original event (a possibility not infrequent), it lacks the above element of weakness and is entitled to be admitted on the same principles as still photographs. The only circumstance then to be considered is that in a few matters, such as speed and direction of human movement, or relative size in the focus, the multiple nature of the films requires special allowances of error to be made; but these allowances are no different in kind from the elements of error inherent under certain conditions in still photographs."

Based on the rule there stated, it seems to us that the moving picture which the defendant sought to introduce in the present case was admissible providing the requisite precautions were followed by the justice presiding at the trial. If such moving pictures have any tendency to exaggerate any of the true features which are sought to be proved by the introduction thereof, that situation may be met and properly disposed of by the court. When proper safeguards are followed, no harm can come from the introduction of such pictures.

Our attention has been called to the case of *Algeri* v. *Cleveland R. Co.* (Cleveland Common Pleas, May 13, 1920), cited in Wigmore on Evidence (*supra*). That was a personal injury action. To disprove the plaintiff's alleged incapacity, a moving picture of the plaintiff at work as a bricklayer, taken after the date of the injury, was received in evidence.

That case is strikingly similar to the one now under consideration. While we do not believe a moving picture of the location of the place of the accident taken after the accident should be admitted in evidence unless it can be shown without question that the conditions are the same as those existing at the time of the accident, we hold that moving pictures of this plaintiff taken while walking along a public street may be admitted in evidence.

It follows, therefore, that in view of the error committed by the court in refusing to admit in evidence the testimony of Michael Birnbaum and in refusing to allow the projection, of moving pictures the judgment and order should be reversed and a new trial ordered, with costs to the appellant to abide the event.

FINCH, P. J., O'MALLEY, TOWNLEY and GLENNON, JJ., concur.

Judgment and order reversed and a new trial ordered, with costs to the appellant to abide the event.