[Civ. No. 10367.   First Appellate District, Division Two.—June 9, 1937.]

JOSEPHINE HEIMAN et al., Appellants, v. MARKET STREET RAILWAY COMPANY (a Corporation), Respondent.

Edgar C. Levey for Appellants.

William M. Abbott, Cyril Appel and Ivores R. Dains for Respondent.

STURTEVANT, J.—This is an action to recover damages for personal injuries. In the second amended complaint Josephine Heiman, one of the plaintiffs, alleged that she was injured by being struck by one of defendant's cars on the 5th day of June, 1935. It is also alleged that Leo P. Heiman, her husband, incurred numerous expenses and was compelled to make numerous expenditures for medical care and treatment of his wife, and that he lost a considerable sum being the reasonable value of her services. In the complaint it is alleged that in the accident Mrs. Heiman suffered "extreme shock to the nervous system, numerous contusions upon the body and legs, ecchymosis of the occiput of the head, ecchymosis of the left eye, lacerated wound on the inside of the upper lip with surrounding ecchymosis, involvement of the nerve supply to the arms and legs, and concussion of the brain". It was also alleged "that prior to and before the collision and accident aforesaid, said plaintiff, Josephine Heiman, was an able-bodied woman; sound in mind and body, etc.". The defendant filed an answer in which it admitted it was a corporation operating a street railroad, but denied all of the other allegations contained in plaintiffs' complaint. The action was tried before the trial court sitting with a jury. The jury returned a verdict in favor of the plaintiffs for $800. The plaintiffs made a motion for a new trial, the motion was denied, and they have appealed from the judgment entered on the verdict.

The case was presented by the parties in the trial court on two radically different theories. It was the theory of the plaintiffs that Mrs. Heiman was seriously bruised and that as a result of the impact she was rendered a physical and nervous wreck. On the other hand, it was the theory of the defendant that Mrs. Heiman was a malingerer and

that she was attempting to claim as injuries suffered in the accident things that were in no manner referable thereto but were the results of other ailments and injuries. The defendant in that connection developed the fact that on June 5, 1935, the date of the accident and for several months prior thereto, Mrs. Heiman was going through the period of change of life. They also developed the fact that in April, 1936, while riding in an automobile at Willits, Mendocino County, Mrs. Heiman was seriously injured in a collision. The trial was had commencing June 15, 1936.

■ The first point made by the plaintiffs is that the verdict of the jury was manifestly a compromise verdict and that $800, the amount awarded to the plaintiffs, did not amount to more than about one-half of their expenditures and allowed nothing for pain and suffering. There is not a word contained in the record on which this court may predicate the conclusion that the verdict of the jury was a compromise. There was substantial testimony that in the accident alleged Mrs. Heiman suffered merely superficial bruises which quickly responded to treatment and that the cost of the treatment of those bruises and wounds was not considerable. Much evidence was introduced of and concerning the various injuries and complaints claimed by the plaintiffs. It may be said that the evidence was conflicting but it may not be said that the plaintiffs introduced clear proof to the effect that many of the injuries complained of were referable to the accident occurring on June 5, 1935.

■ During the trial the plaintiffs called Dr. George J. Heppner, the family physician and surgeon of the plaintiffs. Later he was cross-examined by the defendant. Having developed the fact that after the accident Mrs. Heiman was sent to the French Hospital and was there under the treatment of Dr. Heppner, the defendant laid the foundation therefor and later introduced in evidence the record kept of Mrs. Heiman's case at the French Hospital. The record was signed by Dr. Heppner and contained statements inconsistent with statements given by the doctor in the courtroom. The plaintiffs earnestly contend that the record was hearsay and was improperly received in evidence. If Dr. Heppner had not testified on the trial then, as the plaintiffs contend, the record of the French Hospital would have been hearsay in the instant case and would not have been admissible. (22

C. J. 902; *Bollinger* v. *Bollinger,* 154 Cal. 695, 706 [99 Pac. 196].) But the defendant asserts that the record contained many different statements that were at variance with the testimony given by Dr. Heppner while a witness on the stand. For that reason it contends the record was admissible for the purpose of impeaching Dr. Heppner. (Code Civ. Proc., sec. 2052; *Silvey* v. *Hodgdon,* 48 Cal. 185, 187–189; *Empire Gold Min. Co.* v. *Bonanza Gold Min. Co.,* 67 Cal. 406, 409 [7 Pac. 810]; *Johnson* v. *Powers,* 65 Cal. 179, 180 [3 Pac. 625]; *Toby* v. *Oregon Pac. R. R. Co.,* 98 Cal. 490, 502 [33 Pac. 550]; *People* v. *Glaze,* 139 Cal. 154, 157 [72 Pac. 965]; *Bailey* v. *Market St. Ry. Co.,* 3 Cal. App. (2d) 525, 531 [40 Pac. (2d) 281].) During the argument the plaintiffs contended there was nothing in the record contradicting Dr. Heppner. However, an examination of the record discloses there were numerous inconsistencies. We think it may not be said the trial court erred in admitting the record in evidence. Dr. Heppner had testified on his direct examination to a long list of injuries which Mrs. Heiman sustained in the accident. Said list varied in many material respects from the entries set forth in his handwriting on the evening of June 5, 1935, the date of the accident, in the hospital record, although the entries were made on said last-mentioned date when the facts were fresh in the mind of the witness and were the subject especially under consideration. Dr. Heppner testified to facts indicating that his patient was not cured at the date of the trial. The record contained recitals to the effect she had recovered eight days after the accident.

After Mrs. Heiman became convalescent she went to Palo Alto for the purpose of rest and to further recuperate. During the period she was at Palo Alto she claimed to have been so debilitated, sick, sore, and nervous, as to be a confirmed invalid. As a part of its case the defendant introduced a set of moving pictures. They purported to show Mrs. Heiman's movements in Palo Alto; to show her driving an automobile in and out of heavy traffic; and to show her shopping, walking, stooping and bending without assistance from anyone. They also showed her carrying grocery bundles. The testimony showed that the pictures were taken in August, about two and a half months after the injury occurred. The plaintiffs contend no foundation was laid, but they do not show in what respect it was not laid.

The plaintiffs go further and contend that in no instance should moving pictures be received in evidence. This contention is based on the fact that numerous "pranks and tricks" may be developed on the screen. The same contention can be made regarding many classes of evidence. The record before us does not disclose that the reels were examined and it was not disclosed they had been altered in any respect. But when, as here, testimony is introduced to the effect that the picture is a true representation of the scene as witnessed by the photographer, the objections mentioned are without foundation. That photographs may be admitted in evidence will hardly be questioned (10 Cal. Jur. 896) ; that moving pictures are but a series of single pictures is known to everyone. If single pictures may properly be received in evidence, it is difficult to see any reason why moving pictures may not be, and at the present time the general rule is that they may be. (*Boyarsky* v. *G. A. Zimmerman Corp.*, 240 App. Div. 261 [270 N. Y. Supp. 134, 137] ; Wigmore's 1934 Supplement to his work on Evidence, p. 339.) It has been held that under certain circumstances moving pictures should not be received in evidence. (*State of Maryland for Use of Chima* v. *United Rys. & Elec. Co.*, 162 Md. 404 [159 Atl. 916, 83 A. L. R. 1307].) In that case and cases there cited, it will be noted that under the facts a still picture would not have been admitted in evidence. However, at page 1315 the Supreme Court of Maryland said: "When moving pictures might and might not be used advantageously and properly in placing the facts before juries is a question the answer to which must vary with one case and another, and we think the decision in each case must be left largely to the judgment and discretion of the presiding judge, without any restricting general formula laid down to control him." In the instant case we think it is clear that the trial court did not abuse its discretion in allowing the moving pictures to be exhibited to the jury. Moreover, while the plaintiffs objected to the moving pictures when offered by the defendant, on a later date they caused the pictures to be exhibited again to the jury. By doing so they waived their objection. (*Estate of Visaxis*, 95 Cal. App. 617, 625 [273 Pac. 165].) At no time did they question the truth of the portrayals. We think the trial court did not err in admitting the pictures

in evidence and furthermore that on the record as made the plaintiffs are in no position to complain.

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 5, 1937.