CHARLES DENISON, APPELLEE, v. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

280 N. W. 905

FILED JULY 15, 1938.   No. 30326.

*Kennedy, Holland, De Lacy & Svoboda,* for appellant.

*Wear, Boland & Nye* and *Robert E. McCormack, contra.*

Heard before GOSS, C. J., EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ., and BLACKLEDGE, District Judge.

PAINE, J.

This is an action for personal injuries sustained by plaintiff in alighting from a street car in Omaha. The jury returned a verdict for $5,000, from which defendant appeals.

The plaintiff alleged in his petition that he was 57 years of age, a strong, able-bodied man, working regularly as a stock buyer, earning several hundred dollars a month, at the South Omaha stockyards; that on August 1, 1936, he was a fare-paying passenger on street car No. 907; that, while alighting at his destination, about 7:30 p. m., at Twenty-fourth and N streets, South Omaha, the rear door closed on him, hurling him to the pavement, inflicting severe, painful, and permanent injuries upon him, which are described in detail in the petition; that he lost his income for a long time, and his earning capacity was greatly diminished. He has been under the care of doctors, and indebted for medical expenses, and alleged that he had been damaged in the sum of $10,000.

The defendant admitted that it is a corporation, operating a street car line, and denied all other allegations, and asked to have the cause of action dismissed.

In the motion for new trial, the giving of nine instructions by the court, and the refusal to give fifteen instructions offered by defendant, are set out as errors, also certain errors in the trial, and misconduct of the jury. In the brief, stress is placed upon the fact that the verdict of the jury was excessive and the result of passion and prejudice.

The evidence of the plaintiff is to the effect that three passengers ahead of him got off the car at Twenty-fourth and N streets, which was a regular stopping point; that he was the last one getting off there; that he had one foot on the ground, and was removing his foot from the step when the door slammed and hit him on the left shoulder and back. His shirt was torn and his right elbow was injured; he felt pain in his neck, back, and spine. His wound was dressed by Dr. Humpal at the police station. Dr. John Koutsky was his family physician, and X-rays were taken, and hot packs and infra-red lights were used. After six

weeks he tried to work one day, but went home and was confined to his bed for two or three weeks. He carried his arm in a sling until about November. A nerve was injured so that he has constant pain in his shoulder, neck, and back. He went back to work about the first of January. The cords are drawn on his shoulder, so that he carries his neck in a cramped position. The injuries to his cervical vertebræ are claimed to be permanent. Dr. Dishong, a nerve specialist, testified that he will never be without a stiff neck, or free from pain. Other doctors testified there was a deviation in his spine of about half an inch; that the reflexes were diminished in his left arm, and he did not have as much muscle there as in his right arm. Fourteen months after the accident he was still under a doctor's care, receiving treatment at least once a week. The plaintiff's testimony indicates that his earnings had decreased at least 50 per cent., and he was unable to earn anything from the date of the injury on August 1 until January 1 following. He and his wife both testified to the severe pain which he had suffered for months.

The defendant, to offset this evidence, introduced exhibits Nos. 7 and 8, being two reels of moving pictures, which had been taken by Felber Maasdam, an industrial cinematographer. He testified that he spent parts of September 15, 16 and 17, 1937, taking these films, with his camera equipped with a telescopic lens. These pictures show the plaintiff around the stockyards, engaged in various activities. The operator was instructed to run the projection machine, to show the normal speed of the movements of the plaintiff, before the jury, not faster or slower. The plaintiff is shown on top of a runway, opening a gate, driving three cows, closing the gate, carrying hay, putting it in feed troughs, inspecting stock, and other movements.

The operator on cross-examination testified he was paid $1.50 an hour and some other expenses for taking the pictures, and $25 a day for running them for the jury in court. He testified that, so far as he knew, the plaintiff had no knowledge that these motion pictures were being

taken during the parts of three days while they were being "shot."

The use of moving pictures for the purpose of proving certain facts before the jury is a matter that should be left largely to the judgment and discretion of the trial judge. *State v. United Railways & Electric Co.*, 162 Md. 404, 159 Atl. 916, 83 A. L. R. 1307.

It appears to be the defendant's theory that it was absolutely impossible, under the physical facts, for the plaintiff to have been injured as he described.

It is the contention of the defendant that the rear door appliances of car No. 907 were, on the date of the accident, in perfect order. To present its contention to the jury, 12 out of 15 instructions offered by the defendant and refused by the .court related to the construction of the door, its operation, and the position the defendant was in.

One of these requested instructions reads as follows: "You are instructed that if you find that the plaintiff in the act of alighting fell and that his fall was not caused by being struck by the doors then you are instructed that your verdict should be for the defendant."

The foreman of the defendant company testified that this car No. 907 was a óne-man car; that the operator sits in front and controls the front door by a lever, and that the car can be started whether the front door is open or closed, but that this is not true of the rear door, but that the brakes are in emergency as long as the rear door remains open, and until the rear door is shut and the step raised he can make no contact with his electric power, so the car cannot be started.

After the car stops, the motorman pushes a button, which automatically allows the rear door to open, folding to the front, and the step goes down; so long as a passenger is standing on the treadle or step the car will not start forward, for it is impossible for the car to start until the step is up and the door is closed. Photographs, being exhibits Nos. 12 and 13, show that the rear door opens by folding in the center and being drawn to the front of the opening;

that when entirely open the two halves project out from the car one-half the width of the full door. The edge of the door is covered with a piece of rubber, and if, in closing, the door strikes any object, it is claimed it will fly open again.

The defendant had street car No. 907 brought near the courthouse, at Eighteenth and Harney streets, and connected with power so it would operate, and the foreman of the car shops testified that it was in the same condition as when he inspected it three days after the accident, although he admitted it had been in service and run perhaps a thousand miles since the accident. The defendant made a formal request of the trial court to permit the jury to inspect this street car and observe the operation of the rear door. The court instructed the jury to inspect the car for the limited purpose of examining the operation of the rear door. The jury were instructed not to discuss the operation among themselves, nor talk to any person but the bailiff who accompanied them. If they desired anything in particular done, the bailiff would tell the foreman, Mr. Nelson, who would be out there to operate the car. The court finally cautioned the jury as follows: "I want it expressly understood you are only inspecting this car to give you an idea how it operates generally, and because it operates now in good working condition will not be considered by you as any evidence that it was in perfect operating condition on the day that this accident occurred."

Section 20-1108, Comp. St. 1929, gives the court the right to permit a jury to view property in litigation, or the place where a material fact occurred. Under this law, it was proper for the jury, properly cautioned, to go in a body, in charge of the bailiff, to view the mechanism of a street car for closing the rear door, the same being on a track adjacent to the courthouse. *Chicago, R. I. & P. R. Co. v. Farwell*, 60 Neb. 322, 83 N. W. 71.

The result of such observations of the jury is evidence which, in arriving at a verdict, the jury may consider in connection with all other competent evidence. *Stull v. De-*

*partment of Roads and Irrigation,* 129 Neb. 822, 263 N. W. 148.

The jury must have satisfied themselves that it was possible for the plaintiff to be injured just as he testified, and that such injury was due to the negligence of the defendant company in the operation of the rear door of said street car, or they would not have returned a verdict in his favor. When the evidence is as sharply in conflict as it was in this case, the jury had the advantage of this court in the personal examination they made of the street car, and such examination doubtless had a bearing in the final disposition of the case. A verdict of the jury based on conflicting evidence will not be disturbed unless clearly wrong.

We have examined the other three instructions offered, and refused by the trial court, and there was no prejudicial error in refusing to give them.

The most serious objection in the minds of this court is that the verdict is excessive for the injuries as disclosed by the evidence. The defendant argues that the plaintiff had arthritis in his shoulder and neck before the accident; that he was able to make some effort toward campaigning for the office of county commissioner of Sarpy county, for which he had filed at the time of the accident; that he was confined to his home for only a short time, and within four or five months was back, attending to his business in the stockyards; that his medical expense was only $110.

On the other hand, the plaintiff's counsel argue that he suffered injury to dorsal and cervical nerves, and injuries to back and spine, requiring him to carry his head in an unnatural position, and a diminution of earning capacity of 50 per cent., and that a verdict of $5,000 is not excessive.

This court is satisfied that plaintiff is entitled to a recovery for his injuries, and the record does not warrant a reversal on the ground of passion and prejudice. However, considering his age, and the fact that he had arthritis before the accident, and the work that the moving pictures show he is now able to perform, we have reached the conclusion that the verdict does appear excessive, for the most

favorable view of the evidence does not support a verdict for $5,000.

It is the decision of the court that this judgment should be reduced to $4,000. If the plaintiff within 20 days files a remittitur of $1,000, the judgment will stand affirmed, otherwise it is reversed and remanded.

AFFIRMED ON CONDITION.