METROPOLITAN LIFE INS. CO. v. WRIGHT.

(In Banc. Dec. 23, 1940.)

[199 So. 289. No. 34285.]

Wells, Wells & Lipscomb, of Jackson, and **Welch & Cooper,** of Laurel, for appellant.

Albert E. Easterling, of Laurel, for appellee.

**Smith, C. J.,** delivered the opinion of the court.

The appellee recovered a judgment against the appellant on a disability insurance policy providing payments to the insured thereunder to begin if and when the insured becomes "wholly and permanently disabled by accidental injury or disease, before attaining the age of sixty years, so that he is and will be permanently, continuously and wholly prevented thereby from performing any work for compensation or profit." The evidence was in conflict as to whether the appellee had become permanently and wholly disabled within the meaning of the policy. Only three of the assignments of error require a response thereto.

1. A physician who had examined the appellee was permitted to answer (which he did in the affirmative) the question: "In your opinion as a physician, would you say that he is or is not totally and permanently disabled?" The form of the question aside, it was incomplete in that it fails to ask what the appellee was disabled from doing. But that also aside, since the judgment must be reversed on other grounds, we come to the admissibility of the opinion on the assumption that it referred to the appellee's ability to perform "any work," as other testimony of the witness indicates that it does.

The answer of the witness was based on the fact that his examination of the appellee disclosed that he was suffering from hardening of the arteries and high blood pressure to such an extent that work would endanger his life. The effect of work on one suffering as the witness said the appellee was is not a question which a layman unacquainted with medical matters can satisfactorily decide without the assistance of expert medical testimony; consequently, the opinion of this witness, with the hereinbefore mentioned assumption, was properly ad-

mitted. 29 Am. Jur. Insurance, Section 1499; Cooper v. Metropolitan Life Ins. Co., 323 Pa. 295, 186 A. 125, and cases cited in note thereto in 111 A. L. R. at p. 603; 7 Wigmore on Evidence, 3rd Ed., Section 1975. Compare United States v. Spaulding, 293 U. S. 498, 55 S. Ct. 273, 79 L. Ed. 617, and the criticism thereof in Wigmore on Evidence, op. cit., and note to 111 A. L. R. at p. 604.

2. The court below charged the jury for the appellee "that if you believe that any witness has knowingly and maliciously sworn falsely to any material fact, then you may entirely disregard the entire evidence of such witness." This instruction omits the word "corruptly," which, or its full equivalent, this Court has several times said must appear therein; whether the evidence must be corruptly given appears by implication or is embraced within the word "maliciously" we will not pause to inquire, for the instruction should not have been given even though the word "corruptly" had appeared therein. The exploded (McDonald v. State (Miss.), 28 So. 750), dangerous (Bell v. State, 90 Miss. 104, 43 So. 84), worthless (3 Wig., Ev. (3 Ed.), Sec. 1008), and pernicious source of new trials (cf. Turner v. State, 95 Miss. 879, 50 So. 629) maxim, "falsus in uno, falsus in omnibus," on which the instruction is based, deals only "with the weight of evidence. The jury are told by it what force to give to a falsity after the evidence has shown its existence." Wigmore, op. cit. To include it in an instruction to a jury, therefore, is in direct violation of Section 586, Code 1930, which provides that: "The judge . . . shall not . . . charge the jury as to the weight of evidence." That such an instruction violates that section has not heretofore been taken into consideration by this Court when passing on instructions based on the maxim.

3. The appellee is suffering, according to his testimony, from hardening of the arteries and such high blood pressure that work would endanger his life. At the time of the trial in the Court below, he was and had for some time been doing road construction work for the Works

Progress Administration. According to his evidence, the work was of a light character, requiring but little physical exertion. According to the evidence for the appellant, it was heavy work—with pickaxe and shovel.

Sometime before the trial, an agent of the appellant made a motion picture of the appellee at work on a highway, which picture, according to the appellant's evidence, discloses he was then at hard labor, shoveling gravel. The picture was shown to the judge out of the presence of the jury, who, on objection by the appellee, refused to let it be shown to the jury, assigning as a reason therefor "that for the jury to see the picture would be to create prejudice . . . it would not be the fair thing to do." The picture, according to the undisputed evidence, was taken by a competent motion picture photographer with a motion picture camera of standard make in good condition, and would accurately reproduce the scene photographed, including the speed at which the appellee was then working. The film of the picture was made by an expert therefor and was in the same condition then as when made. It was to be thrown on a screen by a projector of standard make in good condition, operated by a competent operator.

Evidence by means of motion pictures exhibited to a trial jury, while novel, is admissible when the accuracy with which they will reproduce the scenes photographed is proven,—somewhat like the accuracy of an ordinary photograph is proven. 3 Wig. Ev. 3rd Ed., Sec. 798a. This record does not disclose whether, in order to exhibit the picture to the jury, it would have been necessary to darken the courtroom; or if such was necessary, that any reason then existed that would render it improper or impracticable for the court to sit temporarily in darkness, in the absence of which this picture was admissible in evidence. This question has arisen in other jurisdictions, but no good purpose would be served by discussing the cases dealing therewith as the principles governing

its solution are simple and well established. All we have here is the application of old principles to new facts.

We are not dealing with a picture of a scene reconstructed and staged for the purposes of the picture by actors according to their recollection of the original, as to the admissibility of which we express no opinion.

Reversed and remanded.

**Ethridge, J.**, delivered a partly concurring and partly dissenting opinion.

I concur in the view that the testimony of the physician was properly admitted, and that it was expert testimony, concerning which the average layman would not be qualified to judge. The opinion of a physician may be very helpful in suits involving questions of physical disability.

The instruction quoted in the majority opinion, telling the jury that, "If you believe that any witness has knowingly and maliciously sworn falsely to any material fact, then you may entirely disregard the entire evidence of such witness," is inaccurately drawn, but I doubt if it would be reversible error; for the words used carry substantially the idea involved in using the word "corruptly." While not exactly synonymous, the words "maliciously" and "corruptly" each convey the idea that the purpose of the witness in testifying was unlawful, unjustifiable and false. To be corrupt, swearing is not necessarily the result of bribery, or a pecuniary consideration to the witness so swearing; a witness swears corruptly when he knows that what he swears is false, and does it with an unlawful motive or purpose.

However, I would not dissent if the opinion had stopped with condemning this instruction—the safe way is to follow the precedents on this proposition, using all the words required in such instance, instead of experimenting with words that may be deemed substantially synonymous. But I must emphatically dissent from the holding

that the giving of this instruction is error in any case, and that it violates section 586 of the Code of 1930, as being on the weight of the evidence within the meaning of the prohibition in that section. The statute (section 586 of the Code) was not intended to prevent the giving of cautionary instructions, nor to inform the jury as to its power to disregard the testimony of a witness who, the jury finds, has committed perjury in the particular case. The statute has been on the books for many years, and the principles have been applied in many cases. What the statute is designed to prohibit is the giving by the trial judge of his opinion on the issues and facts involved. It was designed to leave the jury free to act on its own opinion as to the weight and credibility of the testimony. It is essential to the administration of justice that the jury be told of their power to disregard the testimony of a witness who has willfully, knowingly, corruptly and falsely testified in regard to a material fact in issue. Under a rule which we have applied in our decisions, facts must be accepted as true when not disputed, and which are not unreasonable or impossible on their face, and are not contradicted by other witnesses.

A witness may testify as to one essential fact in a lawsuit along with other witnesses; and may also be the sole witness in regard to other material facts, or to a number of essential facts; and when he has willfully, knowingly, and corruptly given false testimony, this surely would be sufficient reason to disregard his testimony on other facts where he might be the sole witness speaking.

The term "maliciously" when coupled with the term "falsely" carries the idea of corruption. We shall not pursue the definition of words here involved, because the majority opinion pretermits the question of whether these words are the equivalent of "corruptly."

As to the introduction of motion pictures in connection with the issue of physical disability to the extent of being unable to pursue a gainful occupation without endangering health or life—this is a question new to this state.

Motion pictures are so susceptible of being deceptive, presenting a fraudulent picture of the true situation, that I think it doubtful evidence. In my view, a better practice would be to exclude them as evidence, unless made with notice to the adverse party, or in the presence of such party, with the right to also have present witnesses and counsel, to see that the true situation is pictured.

In the record it is admitted by witnesses for the defendant, in whose behalf the moving picture was offered in evidence, that the motion of the picture can be accelerated or slowed down materially, in order not to present the real situation; also, that the wheels of an automobile in motion may be shown as turning backward instead of forward. Even without such proof, nearly everyone has witnessed the operation of moving pictures in slowing or speeding motion, and performing many tricks, such as falling off a precipice, going through buildings with an automobile, and various other illusions which serve to show the possibility of inaccuracy in such evidence.

I think it would be better to leave this matter to be dealt with by the legislature, where limitations would probably be placed upon the conditions under which such evidence might be useful to the public.

The State, to Use of Chima, v. United R. & E. Co., 162 Md. 404, 159 A. 916, 83 A. L. R., at page 1315, in the case note thereto, the learned author said: "While the present subject is one which seems likely to be of considerable judicial interest in the future, a search has disclosed but few cases in which the appellate courts have held either that moving pictures should not be shown to the jury as evidence, or that there was at least no abuse of discretion in excluding such pictures as evidence."

In the case of De Camp v. United States, 56 App. D. C. 119, 10 F. (2d) 984, 985, it was held that it was not error to exclude moving pictures offered in that case, a criminal prosecution for conspiracy to use the mails fraudulently. The moving pictures were there designed to show the actual process of manufacturing glass caskets, which the

government contended could not be done; and which contention was the basis of the charge of fraud. In the course of its opinion the Court said: "A motion picture does not of itself prove an actual occurrence. The thing reproduced must be established by the testimony of witnesses. While the photograph may be a proper representation of the thing produced, yet the testimony of witnesses is required to verify the production. . . . it was for the trial court to determine whether a photograph or moving picture such as was offered, was sufficiently verified as a proper representation of the process of manufacture as it actually existed. This court will not assume, on this record, to determine this question, . . ."

In Gulf Life Ins. Co. v. Stossel, 131 Fla. 268, 175 So. 804, 805, the Court said:

"Appellant devotes the major portion of its brief to the proposition that in order to recover in this case, it is essential that appellee, while the policies were in full force, furnish due proof of his disability. It is alleged that he failed to do this.

"Unquestionably, an insurance company may impose such a condition as a prerequisite to recover, and when so imposed, they have been upheld, but in a prior consideration of this case, we held that the policies were in force at the time of the accident and that they did not in terms require notice of claim and proof of disability before the lapse of the policy. Stossel v. Gulf Life Ins. Co., 119 Fla. 715, 161 So. 835. This holding would seem to be the law of the case and a complete answer to the latter question. Appellant in other words does not bring itself within the rule relied on.

"In support of its contention, appellant exhibited here and in the court below some moving picture films. We have not before been called on to rule on the challenge to this class of evidence. We hold that such evidence is admissible, but to be so, it must be produced under the direction of a commissioner appointed by the court for that purpose. Opposing counsel should also have notice

and an opportunity to be present and the application to take it must make it appear to the trial court that it is material and will enlighten the court on the issues involved. Otherwise it should not be admitted.''

It is true that in the subsequent appeal in the same case the Court held that there might be circumstances which would dispense with notice and the ability to be present. Of course, decisions of other jurisdictions are not controlling on this Court, but are merely persuasive, and may be accepted or rejected as authority by this Court. Such opinions have weight, being rendered by learned judges who are supposed to be impartial and fair. I think the rule announced in this Florida case, above quoted, presents a safeguard which should be required as a condition for the admission of motion pictures in evidence. Motion pictures, so used, may be likened to argument. The witness who took the picture must testify to the conditions reflected by the picture; and if the other party is not present when the picture is taken, with opportunity to challenge the correctness of the picture so made, its introduction may result in grossly unfair advantage to the party producing the picture. The right to be present when such a picture is made is almost as vital to justice as is the right to cross-examine.

In the case here involved, at the time the picture was made the plaintiff was engaged in some kind of work on a Works Progress Administration project. The motion picture, without notice to be present and opportunity to disprove its correctness, might produce the most serious miscarriage of justice. In such cases as this, the temptation might be very great to produce an inaccurate and misleading picture; and there would be no remedy for the party whose picture was taken if the production was inaccurate. He would be unable to produce witnesses to disprove the evidence as given by the moving picture, unless he has notice and opportunity to do so.

It is the purpose of the law that every person shall have equal rights in a lawsuit; and the rules of evidence

are, or should be, such as to insure equal rights before the courts to all litigants. The ordinary person is not able to own or operate such a picture.

An ordinary photograph, stationary, may be re-photographed, enabling the opposite party to depict the object as it existed at the time. But it would be impossible to meet this motion picture evidence, taken without notice, where the correct aspect of the scene could not be proved, should the picture, in fact, be inaccurate or false.

The discretion of the court below in this matter should not be controlled by the Court here. If the picture is permissible at all, it should be by means of application to the trial judge, with the right to opposing parties to be heard against the application prior to their introduction in evidence. The record in this case shows that the trial judge was of the opinion that the use of the pictures in evidence would be unfair and misleading.

I think that on the record in this case the judgment should be affirmed.