[Crim. Nos. 4847, 4848. In Bank. Aug. 30, 1948.]

THE PEOPLE, Respondent, v. JAMES DABB, JR. et al., Appellants.

494

Walter L. Gordon, Jr., Philip S. Schutz and Alexander Oster for Appellants.

Fred N. Howser, Attorney General, and James A. Doherty, Deputy Attorney General, for Respondent.

GIBSON, C. J.—Defendants James Dabb, Joel Harrison, and Clayburne Campbell were each charged by indictment with the murder and robbery of Louie DiCioda while armed with a deadly weapon, and the jury found them guilty of murder and robbery in the first degree. They were sentenced under the robbery count to the state prison for the term prescribed by law. Under the murder count Dabb was sentenced for the term of his natural life, and Harrison and Campbell were sentenced to suffer the death penalty. Dabb filed a notice of appeal from the judgment of conviction and from the order denying his motion for a new trial. The appeals of Harrison and Campbell are automatic under section 1239(b) of the Penal Code.

DiCioda was fatally shot on the night of March 1, 1947, at his liquor store in Los Angeles. With him at the time was Mrs. La von Britson, who testified that she saw Campbell point a gun at DiCioda and heard him say "This is a stickup." Immediately thereafter a shot was fired, and she saw DiCioda slump to the floor. A few seconds later she heard another shot and saw Harrison standing just inside the store. He pointed a gun at her and she stepped behind some liquor cases. Campbell said to Harrison, "You get that," and Mrs. Britson, looking over the top of the cases, saw Harrison leap on a case which was close to the cash register. She heard the cash register ring open, but did not see Harrison take any money from it. When police officers arrived a few minutes later the cash register was open and empty, and some nickels and dimes were found on the floor near by.

About four hours later a cab driver was held up not far from the scene of the murder, and he later identified Dabb and Harrison as the men who robbed him. About two weeks after the murder occurred two policemen saw Dabb and Harrison coming out of a restaurant, and one of the officers said to them, "Just a minute, fellows, I want to talk to you." Harrison started shooting immediately, and both men escaped. The police officers were seriously wounded.

The defendants were arrested about six weeks after the murder, and shortly thereafter made oral and written statements implicating themselves in the homicide. They also reenacted the crime, and their actions were recorded by the use of sound motion pictures. The statements were received in evidence, and the jury viewed the motion picture film in which defendants admitted that they had committed the crime in the manner there depicted. According to this evidence, defendants, pursuant to a prearranged plan, went to the store together. Dabb remained across the street to act as the "lookout" while the others entered the store for the purpose of "looking it over," pretending to be prospective customers. After having, by agreement, a pretended argument as to what they would purchase, Campbell and Harrison left the store, retiring to a near-by building where they could watch Dabb. Shortly thereafter Dabb signaled that the way was clear, and Campbell and Harrison reentered the store. Campbell said to decedent "This is a stickup," and then grappled with him and shot him. Harrison also shot at Di-Cioda. He took approximately $75 from the cash register in the store, and the defendants met later and divided the money.

The confessions were repudiated by defendants at the trial, and each defendant claimed that he was elsewhere when the crime was committed.

The evidence was clearly sufficient to sustain the judgments. Defendants contend, however, that the confessions were inadmissible against them because they assertedly were obtained by force and fear, that the court erred in allowing the sound motion pictures to be viewed by the jury, and that it was also error to admit evidence of the robbery of the cab driver and the shooting of the police officers by Dabb and Harrison.

The rule is elementary that to be admissible a confession must be shown to have been made freely and voluntarily, without any previous inducement, promise or offer of leniency,

and without duress, intimidation or threat. (*People* v. *Williams,* 20 Cal.2d 273 [125 P.2d 9]; *People* v. *Borello,* 161 Cal. 367 [119 P. 500, 37 L.R.A.N.S. 434].) It is incumbent upon the prosecution to lay the foundation for its introduction by preliminary proof that it was voluntarily made. (*People* v. *Jones,* 24 Cal.2d 601 [150 P.2d 801].) Such a preliminary showing was made in this case before each confession was admitted.

The police officer who heard the oral confessions testified that the statements were made voluntarily without force or threat of force and without offer of reward or promise of immunity. As to the written confessions, another officer testified that the three defendants were together when they voluntarily made the statements which the officer wrote as related to him. A separate statement was written for each defendant, and each of them read and signed not only his own statement but those of the other two as well, and said at the time that they were true. A third officer testified that defendants were asked if they would assist in making a motion picture reenactment of the killing, and each answered in the affirmative; that they freely and voluntarily participated in the reenactment; and that no force, threat of force, promise or offer of reward was used to induce them to do so.

The claim that the confessions were obtained by force and fear was first made after they had been admitted in evidence and during the presentation of defendants' case. They related a long story of police brutality beginning at the time of arrest and continuing until, as a result of fear thus engendered, the confessions were given. This testimony was categorically denied by the police officers who obtained the confessions. Although it appears that defendants were questioned intermittently for approximately five hours, commencing at 11 o'clock at night, they made statements implicating themselves in the crime within one or two hours after the questioning began, and the remainder of the time was spent in securing detailed information concerning the crime. They were together during substantially the entire period and were permitted to be seated and to use the restroom whenever a request was made. No force or abusive language was used by the police officers. At the end of the questioning defendants were taken to separate cells, where they slept the remainder of the night. The statements that were reduced to writing were made late on the following morning.

■ It was the function of the jury to weigh the testimony of the defendants and that of the police officers in determining whether the confessions were voluntarily given (*People* v. *Perry,* 195 Cal. 623, 636 [234 P. 890]), and the verdict of guilty shows that the conflict was resolved by the jury against the defendants. ■ The manner in which the defendants were questioned did not require a rejection of their confessions, and under all the evidence the jury was justified in concluding that the confessions were freely and voluntarily given.

The next question concerns the admissibility of three sound motion pictures. The first was a reenactment of the crime by defendants, with one of the police officers acting as decedent. The other two showed the reenactment by Dabb and Harrison of the robbery of the cab driver and the shooting of the police officers. There was first a rehearsal of each incident, at which the defendants were asked to show what they had done. From this it was determined where the camera should be set up in order to embrace all of the action, and the entire scene was then photographed, with the sound and the pictures being simultaneously recorded on the same strip of film. All of these pictures, with the sound, were exhibited to the jury.

A sound motion picture of a confession was held admissible, upon proper foundation, in *People* v. *Hayes,* 21 Cal.App.2d 320 [71 P.2d 321], and in the only other discovered case where this means was adopted to prove a confession, the admission of the picture was likewise sustained. (*Commonwealth* v. *Roller,* 100 Pa.Sup.Ct. 125.) Motion pictures have also been held admissible in other types of cases. (*Harmon* v. *San Joaquin L. & P. Corp.,* 37 Cal.App.2d 169 [98 P.2d 1064]; *Heiman* v. *Market Street Ry.* Co., 21 Cal.App.2d 311 [69 P.2d 178]; *Kortz* v. *Guardian Life Ins. Co.,* 144 F.2d 676, 679; *Metropolitan Life Ins. Co.* v. *Wright,* 190 Miss. 53 [199 So. 289]; *Boyarsky* v. *G. A. Zimmerman Corp.,* 240 App.Div. 361 [270 N.Y.S. 134]; *Rogers* v. *Detroit,* 289 Mich. 86 [286 N.W. 167]; *McGoorty* v. *Benhart,* 305 Ill.App. 458 [27 N.E.2d 289]; *Owens* v. *Hagenbeck-Wallace Shows Co.,* 58 R. I. 162 [192 A. 158, 112 A.L.R. 113]; *Philippi* v. *New York C. & St. L. R. Co.* Mo.App.), 136 S.W.2d 339; *Denison* v. *Omaha & C. B. St. Ry. Co.,* 135 Neb. 307 [280 N.W. 905]; *Gulf Life Ins. Co.* v. *Stossel,* 131 Fla. 268 [175 So. 804] and 131 Fla. 127 [179 So. 163]; see also notes in 129 A.L.R. 361 and in 83 A.L.R. 1315; but cf. *Gibson* v. *Gunn,* 206 App. Div. 464 [202 N.Y.S. 19].)

In a number of other cases the courts have recognized the

admissibility of motion pictures generally but have held that the evidence was properly rejected either because no sufficient foundation was laid or because the fact sought to be shown by the pictures was not relevant to the issues of the case. (*State of Md. for use of Anna Chima* v. *United R'ways & Elec. Co.*, 162 Md. 404 [159 A. 916] ; *Pandolfo* v. *United States*, 286 F. 8 ; *De Camp* v. *United States*, 10 F.2d 984 [56 App.D.C. 119] ; *Massachusetts Bonding & Ins. Co.* v. *Worthy* [Tex.Civ. App.), 9 S.W.2d 388 ; *Sprinkle* v. *Davis*, 111 F.2d 925 ; *Baker* v. *United States*, 115 F.2d 533 ; *Pacific Mut. L. Ins. Co.* v. *Marks*, 230 Ala. 417 [161 So. 543] ; *Morris* v. *E. I. Du Pont de Nemours & Co.*, 246 Mo. 126 [139 S.W.2d 984, 129 A.L.R. 352] ; *Appleby* v. *State*, 221 Ind. 544 [49 N.E.2d 533].)

 It is argued that a motion picture is susceptible of fabrication, but the same objection has been made to still photographs, which have long been used as evidence, and no valid ground for distinction between still and sound motion pictures presents itself. Protection against falsification or misrepresentation lies in the requirement of preliminary proof that the picture is an accurate reproduction of the scene or event which it depicts, and in the opportunity for cross-examination of the witnesses making such proof. In the present case, before introducing the film in evidence, several persons testified to the circumstances surrounding the filming, including the method of determining where the camera should be set up and operated. There was testimony that the film to be shown to the jury was the identical one which had been exposed while the crimes were being reenacted, and that it accurately portrayed what took place at that time. It is difficult to conceive of a more satisfactory foundation preliminary to the admission of a sound motion picture.

 A motion picture of the artificial recreation of an event may unduly accentuate certain phases of the happening, and because of the forceful impression made upon the minds of the jurors by this kind of evidence, it should be received with caution. As pointed out by Wigmore, such a portrayal of an event is apt to cause a person to forget that "it is merely what certain witnesses say was the thing that happened" and may "impress the jury with the convincing impartiality of Nature herself." (3 Wigmore, Evidence [3d ed.], § 798a, p. 203.) However, when the events which are being photographed consist of a voluntary reenactment by the accused of what occurred, there is little, if any, danger of misleading

emphasis which is unfavorable to him. Moreover, as a method of presenting confessions, sound motion pictures appear to have a unique advantage in that, while presenting the admission of guilt, they simultaneously testify to facts relevant to the issue of volition.

For a few moments while the picture was being shown to the jury there was no accompanying sound, and defendants complain that the picture should have been rejected unless all of the sound was reproduced. However, it does not appear that defendants were in any way prejudiced by this brief absence of sound, which was explained as resulting from a temporary defect in the microphone, which was immediately repaired. They had an opportunity to show what was said during the silent portion, but they did not do so, and there is no support in the record for the claim, made here for the first time, that during the silent interval one of the defendants had said that he was being forced to participate.

Defendants next contend that it was improper to admit evidence of the robbery of the cab driver and the shooting of the police officers by Dabb and Harrison. Campbell was in no way connected with these offenses, and the jury was admonished on a number of occasions that evidence relating thereto could not be considered against him. It must be assumed that these instructions were followed and that he was not prejudiced by such evidence. The trial court also cautioned the jury that the testimony was admissible for the limited purpose of showing the association between Dabb and Harrison and their possession of the means of committing the murder of DiCioda, and with respect to the shooting of the police officers the jury was instructed that the evidence was also admissible to show consciousness of guilt on the part of Dabb and Harrison.

A defendant in a criminal action cannot be required to defend himself against the charge of any crime other than that for which he is on trial, but this rule does not exclude evidence which incidentally discloses the commission of another offense. Evidence which is relevant in establishing guilt of the crime charged is admissible notwithstanding the fact that it tends to connect the accused with an offense not included in the charge. (*People* v. *Peete,* 28 Cal.2d 306, 314-315 [169 P.2d 924] ; *People* v. *McMonigle,* 29 Cal.2d 730, 741 [177 P.2d 745].) As stated in *People* v. *Peete, supra,* at page 315, quoting from *People* v. *Walters,* 98 Cal. 138, 141 [32 P. 864], "whenever the case is such that proof of one crime tends to

prove any fact material in the trial of another, such proof is admissible, and the fact that it may tend to prejudice the defendant in the minds of the jurors is no ground for its exclusion.''

The general test of relevancy is whether the evidence tends logically, naturally, and by reasonable inference to establish any fact material for the People or to overcome any material matter sought to be proved by the defense. If it does, then the evidence is admissible whether or not it embraces the commission of another offense and whether the other crime be similar or dissimilar. (*People* v. *Peete*, 28 Cal.2d 306, 315 [169 P.2d 924].) The relevancy of evidence that proves crimes other than that charged must, of course, be examined with care, due to the prejudicial nature of all such evidence, and it should not be admitted simply on the showing that some part of that transaction is relevant to the case. The possibility of severing relevant from irrelevant portions should, in every case, be considered, thereby protecting the defendant against reference to other crimes where it has no tendency to establish facts pertinent to the proof of the crime charged.

There can be no question that the facts that Dabb and Harrison were together near the scene of the murder four hours after its commission and that each had in his possession the means of committing that crime were relevant, but it is argued that the evidence should have been limited to the bare proof of those facts without reference to the surrounding circumstances which disclosed the commission of another crime. It is clear, however, that if the testimony of the cab driver had been so restricted, the jury would have been unable to view the essential facts in their true perspective and thereby properly evaluate the weight of the evidence. Under such circumstances it was not error to allow the witness to relate the entire occurrence. (See *People* v. *Simeone*, 26 Cal.2d 795, 804-805 [161 P.2d 369]; *People* v. *Nakis*, 184 Cal. 105, 114 [193 P. 92]; *People* v. *McGilver*, 67 Cal. 55 [7 P. 49]; *People* v. *Cato*, 13 Cal.App.2d 391, 394 [56 P.2d 1245].)

Evidence of the actions of Dabb and Harrison in their efforts to avoid questioning by the police was admissible even though it showed the commission of another offense. Its relevancy lay in the fact that a consciousness of guilt may be inferred from an attempt to avoid apprehension, especially where, as here, violence is used. (*People* v. *Arnold*, 199 Cal. 471 [250 P. 168]; *People* v. *Ellis*, 188 Cal. 682 [206 P. 753]; *People*

v. *Flannelly,* 128 Cal. 83, 87 [60 P. 670] ; *People* v. *Hawkins,* 127 Cal. 372 [59 P. 697] ; *People* v. *Oakleaf,* 66 Cal.App. 314 [226 P. 24].) While remote as to time, the evidence also possessed some value as tending to show the association of Dabb and Harrison and their possession of the means of committing the murder.

▇▇▇ It would appear, however, that the facts relating to the robbery of the cab driver and the shooting of the police officers were unduly emphasized by the introduction of the sound motion pictures, and that unjustified importance was given to these incidents by placing them before the jury in such a compelling manner. As before stated, evidence of this kind should be received with caution because of the forceful impression which it makes upon the minds of jurors, but in view of the clear proof of the guilt of the defendants we cannot say that the admission of the motion pictures of the subsequent offenses resulted in a miscarriage of justice.

The judgments and the orders denying defendants' motions for a new trial are affirmed.

Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I concur in the judgment of affirmance because I am convinced from an examination of the record that there can be no doubt as to the guilt of the defendants. I do not, however, agree with the statement in the majority opinion that so far as California is concerned the rule is that: "A defendant in a criminal action cannot be required to defend himself against the charge of any crime other than that for which he is on trial, but this rule does not exclude evidence which incidentally discloses the commission of another offense."

I am convinced that the last-quoted statement is no longer the law in California and that the rule is now that evidence of other crimes committed by the defendant is admissable regardless of its relevancy to the offense for which he is being tried. This conclusion is clearly demonstrated by the holdings in recent decisions of this Court including the one in the case at bar. (See *People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924] ; *People* v. *Westek,* 31 Cal. 2d 469 [190 P.2d 9].) In the face of these decisions the above-quoted statement has all of the characteristics of "a sounding brass, or a tinkling cymbal."