## HUNTER et al. v. SCRUGGS DRUG STORE, Inc.

### In re WHITLEY.

### No. 4607.

Circuit Court of Appeals, Fourth Circuit.

Aug. 14, 1940.

O. B. Crowell, of Hendersonville, N. C., for appellant Liquid Carbonic Corporation.

J. Y. Jordan, Jr., of Asheville, N. C., for appellee.

Before SOPER and DOBIE, Circuit Judges, and CHESNUT, District Judge.

SOPER, Circuit Judge.

This litigation began with the filing of a claim against the estate of J. B. Whitley, in bankruptcy, by Scruggs Drug Store, Inc., on an indebtedness of $8,925, with interest from January 20, 1936, based upon a chattel mortgage of that date. The mortgage was originally given by C. E. Cline and Frank Waldrop to secure a debt of $12,000 represented by 160 promissory notes of $75 each payable monthly. It covered the stock of merchandise, furniture and fixtures of a drug store business known as the Economy Drug Company located at Hendersonville, North Carolina, and purchased by the mortgagors from the mortgagee. J. B. Whitley, through certain mesne conveyances, subsequently acquired the property subject to the terms of the mortgage. The debt matured December 20, 1938, when default having been made, the entire balance was declared due and payable in accordance with the terms of the mortgage. On December 24, 1938, Whitley delivered the property to the trustee under the mortgage, and on January 24, 1939, an involuntary petition in bankruptcy was filed against him. The mortgagee then asked permission of the court to sell the property through the mortgage trustee under the terms of a power of sale contained in the document, and apply the proceeds of the sale to the payment of the debt. This motion was opposed at the outset by the trustee in bankruptcy.

The mortgage expressly covers not only the fixtures, equipment and stock of merchandise in the drug store, but also "all additions, replenishings or substitutions which may be made by the said parties of the first part (the mortgagors) during the continuance of this deed in trust to the said furniture, fixtures, equipment and stock of drugs and merchandise". The mortgage also provides that the mortgagors shall retain possession of the property and have the right to sell the stock of drugs and merchandise in the regular course of trade. Speaking generally, a mortgage covering a movable stock of goods is valid in North Carolina. Hickson Lumber Co. v. Gay Lumber Co., 150 N.C. 282, 63 S.E. 1045, 21 L.R.A.,N.S., 843; Standard Dry-Kiln Co. v. Ellington, 172 N.C. 481, 484, 90 S.E. 564; Merchants' & Farmers' Bank v. Pearson, 186 N.C. 609, 120 S.E. 210; Twin City Motor Co. v. Rouzer Motor Co., 197 N.C. 371, 148 S.E. 461.

Whitley and two associates acquired the mortgaged property on November 1, 1937, by a bill of sale and agreement which provides that the conveyance is made subject to the mortgage made to secure the indebtedness above described, on which a balance of $10,425 remains unpaid, "the payment of which said balance, according to the terms of said deed of trust or mortgage, the parties of the second part (Whitley et al.) as part of the consideration for this transfer and conveyance, hereby assume and agree to pay and discharge as and when the same is due, under the terms of said instrument". Whitley subsequently acquired the interest of his associates in the property.

The trustee in bankruptcy has withdrawn all claims to the mortgaged property. The present controversy relates only to the furniture, fixtures and equipment in the store at the time of bankruptcy, and the contesting parties are on the one side the mortgagee, which claims that all of these articles are subject to the mortgage, and on the other, the Liquid Carbonic Corporation, which claims a lien superior to the mortgage on a portion of these articles by reason of a transaction presently to be described. The District Judge decided the controversy in favor of the mortgagee, holding that the lien of its mortgage attached not only to the property originally described in the mortgage, but also to property acquired by Whitley from the

Liquid Carbonic Corporation as hereinafter described.

On April 14, 1938, the Carbonic Corporation entered into a' conditional contract of sale with Whitley whereby it sold to him certain property specifically described in the document under the caption: "Soda Fountain—Back Bar Superstructure—Counter Slabs". The purchase price was $2,487.74, of which $1,597.85 remained unpaid at the time of the bankruptcy, and it was agreed that the title to the equipment should remain in the seller until the purchase price was paid in full. The Carbonic Corporation prayed the court to order the trustee in bankruptcy to deliver possession of the equipment to it, or in lieu thereof, to pay to it the balance due on the contract. The trustee in bankruptcy, without denying the validity of the claim, took the position that the property should be sold by him and the lien of the Carbonic Corporation transferred to the proceeds of sale. Scruggs Drug Company, Inc., mortgagee under the above described mortgage, filed an answer resisting the petition on the ground that its mortgage covered all the after acquired property, additions, replenishings and replacements in the drug store, and that the Carbonic Company, with full knowledge of this provision in the mortgage, had nevertheless installed the fixtures and equipment which it sought to reclaim. It appears that at the time of the installation of this new equipment there was a soda fountain in the drug store which the Carbonic Corporation tore out in order to instal a new one; and that the Carbonic Corporation requested the mortgagee to release all of its right to the old soda fountain, but the mortgagee refused. It did release from the operation of this mortgage the interior of the old soda fountain which was removed and accepted in part payment for the new equipment.

The Carbonic Corporation also filed a second petition for reclamation which covered a lifetime carbonator sold under a similar contract to Whitley for $160, of which $118 was unpaid at bankruptcy. This petition was also resisted by Scruggs. Whether or not the new equipment was incorporated as part of the mortgaged property is not entirely clear.

■ The first question to be considered is whether the property purchased by Whitley from the Carbonic Corporation was subjected to the lien of the Scruggs mortgage by reason of the terms of that mortgage relating to after acquired property, and by reason of the terms of the agreement of sale by which Whitley acquired the property from the mortgagors and agreed to take it subject to the mortgage and to pay the balance of the mortgage debt according to the terms of the mortgage. There is no doubt that the lien of a mortgage attaches to after acquired property in North Carolina if the mortgage expressly so provides or clearly manifests the intent of the parties to give such a lien. Merchants' & Farmers' Bank v. Pearson, 186 N.C. 609, 120 S.E. 210; Twin City Motor Co. v. Rouzer Motor Co., 197 N.C. 371, 148 S.E. 461. It is not seriously disputed that such was the effect of the Scruggs mortgage whereby the mortgagors conveyed all of the property in the drug store and all additions subsequently made to the furniture, fixtures and equipment; but this conveyance was executed only by Cline and Waldrop, and on its face was binding only upon them. It is generally held that such a covenant does not extend to additions to the mortgaged property subsequently made by a purchaser of the property from the mortgagor, unless the purchaser expressly agrees to fulfill the covenant as his own. Stewart v. Long, 16 Ind.App. 164, 44 N.E. 63; Kribbs v. Alford, 120 N.Y. 519, 24 N.E. 811; Anderson v. Howard & Sims, 49 Ga. 313.

■ It is contended by the mortgagee that these authorities are not applicable in the pending case because Whitley, although not a party to the mortgage, did agree, in 'his contract of purchase from the mortgagors, to take the property subject to the mortgage and to pay the mortgage debt according to the terms of the mortgage. Can it be said that the effect of this agreement is to bring the equipment subsequently acquired by Whitley from the Carbonic Corporation under the lien of the mortgage? We think not. The property covered by the bill of sale from the mortgagors to Whitley was covered by the Scruggs mortgage and it was this property which Whitley agreed to take subject to the terms of the mortgage; and the debt which Whitley then agreed to pay, according to the terms of the mortgage, was the debt evidenced by the unpaid promissory notes which made up the balance of the original mortgage debt. Such property as that which was subsequently purchased by Whitley from the Carbonic Corporation

was not within the contemplation of the parties.

■■ In any event, it is obvious that Whitley could not effectually mortgage any greater interest in the subsequent additions to the property in the drug store than that which he himself acquired from the Carbonic Corporation, that is, a conditional title thereto, subject to the payment of the balance of the purchase price. See Standard Dry Kiln Co. v. Ellington, 172 N.C. 481, 90 S.E. 564; Goodrich Silvertown Stores v. Caesar, 214 N.C. 85, 197 S.E. 698; Fosdick v. Schall, 99 U.S. 235, 25 L.Ed. 339; 10 Am.Jur. 851; 14 C.J.S., Chattel Mortgages, § 297, pages 936, 937. It follows that the Carbonic Corporation has a first lien on the equipment sold by it to Whitley, unless under the doctrine of accession now to be considered the lien was lost by the manner in which the Carbonic Corporation, with knowledge of the mortgage on the drug store property, installed the new soda fountain on the premises in connection with the mortgaged fixtures. "It is a general rule of law", says the Supreme Court of North Carolina in Twin City Motor Co. v. Rouzer Motor Co., 197 N.C. 371, 374, 148 S.E. 461, 463, "that if the materials of one person are united to the materials of another by labor, forming a joint product, the owner of the principal materials will acquire the right of property in the whole by right of accession". For example, a purchase money mortgage on a used car was held in the last cited case to cover a new engine placed in the car by the purchaser and to have priority over the lien of a conditional sales agreement on the engine, not only by reason of an agreement of the mortgagor that the mortgage should cover all additions and improvements to the car, but also by reason of the doctrine of accession. On the other hand, it was held in Goodrich Silvertown Stores v. Caesar, 214 N.C. 85, 87, 197 S.E. 698, that automobile tires placed upon a mortgaged automobile did not fall under the lien of the mortgage, because the doctrine of accession is inapplicable where personal property is placed upon other personal property in such a fashion that it does not become an integral part thereof, but can be conveniently detached.

■ We are unable to apply this doctrine intelligently to the facts of the instant case because of the unsatisfactory condition of the record. It is clear that there was a used soda fountain in the store when the new equipment purchased from the Carbonic Corporation was installed; and that a part of the old structure was removed with the consent of the mortgagee; but it is not clear whether the installation was of such a character that the new equipment became an integral part of the mortgaged property. The record is also uncertain with respect to the installation of the lifetime carbonator purchased from the Carbonic Corporation. No findings of fact with regard to the installation of the soda fountain or carbonator was made by the District Court; and it is therefore necessary that the case be remanded to the District Court in order that these matters be determined.

■ The contention on the part of the Carbonic Corporation that the Scruggs mortgage was defectively recorded need not be discussed. The trustee in bankruptcy has abandoned all claims of invalidity relating to the Scruggs mortgage; and as the Carbonic Corporation had actual knowledge that the property in the Drug Store was covered by the Scruggs mortgage, the doctrine of accession, if applicable at all, would apply whether or not the mortgage was properly recorded.

Reversed and remanded.