Dixie Stock Yard, Inc., *v.* Ferguson.

(In Banc.   Nov. 24, 1941.)

[4 So. (2d) 724.   No. 34738.]

Jacobson, Snow & Covington, of Meridian, for appellant.

**Nichols & Huff**, of Forest, and **J. C. Murray**, of Brandon, for appellee.

**McGehee, J.,** delivered the opinion of the court.

From a judgment in favor of the appellee for the purchase price or value of certain cattle sold and delivered by him to one G. C. Beavers, and which were thereafter carried to the place of business of the appellant, the

Dixie Stock Yard, Inc., and later sold through its auctioneer, the appellant prosecutes this appeal and assigns as error, among other grounds, the refusal of the court below to grant a peremptory instruction in its favor.

The declaration was in three counts, but the case was submitted to the jury only on counts two and three, and there is no cross-appeal. To determine whether the facts were such as to entitle the appellee to a recovery under either of the two latter counts of the declaration, it is necessary to state what the proof disclosed.

On the 30th day of October, 1939, and for some time prior thereto, the appellant was engaged in the business of selling livestock on a commission basis through its auctioneer at public sales held on scheduled days at its stockyard near Meridian, Mississippi, where the owners of such livestock would bring the same to be sold through the auction ring or at private sale, the commission being charged by the appellant in either instance. Its co-defendant, G. C. Beavers, against whom the suit was dismissed in the court below upon his plea of a discharge in bankruptcy, was engaged in the business of both buying and selling livestock. He was not employed by the Dixie Stock Yard, but went about over the country and purchased cattle and other livestock from the owners thereof for resale to whomsoever he pleased, and to a large extent through the auction ring of the said Dixie Stock Yard or at private sale on its premises, with the right to reject any bid made to the auctioneer by members of the buying public if the owner was unwilling to accept the price offered.

The proof also discloses that between the dates of June 23, 1939, to November 7, 1939, inclusive, the appellant had honored numerous drafts drawn on it by the said G. C. Beavers in his own name in favor of persons from who he was purchasing cattle, representing the purchase price thereof, and he testified that appellant had never refused payment on any such draft until November 8, 1939, when it declined to pay the one given

by him to the appellee for the cattle here involved, and which were purchased on October 30, 1939, at the home of appellee in Rankin County, Mississippi, the owner being given a customer's draft for the sum of $423.50, signed by Beavers in his own name and drawn on the appellant, and which draft was deposited for collection at the Bank of Brandon in the due course of business.

Thereupon, the Dixie Stock Yard, at the instance and request of Beavers, caused a cattle truck operator, who hauled for the general public, at Meridian, to go to the home of the appellee and haul these cattle, consisting of twelve steers, to the stockyard of the appellant, where they were kept until the next day in a separate pen assigned to Beavers for his use, and where they were comingled with sixty-nine head of other cattle belonging to him, making eighty-one head of cattle in all, and which were then sold at public sale through the auctioneer of the appellant, the proceeds of such sale, less the commission, hauling charges and feed bill, being credited to the account of Beavers on the books of the appellant corporation.

On the next day after the sale, and at a time when Beavers had a credit balance with the stockyard in the sum of $855.57 as of the close of the auction day's business, a local bank notified the office of the appellant that the draft for $423.50 in favor of appellee Ferguson was held by it for collection, but the same was not called to the attention of the manager of the stockyard until a week later, when payment of the same was refused by him and the draft returned to the Bank of Brandon unpaid.

There was sufficient evidence to make an issue for the jury as to whether or not the appellant had notice before participating through its auctioneer in the sale and disposition of the appellee's cattle, and of their delivery into the hands of innocent purchasers at the sale, that the purchase price thereof had not been paid, the defendant Beavers having testified upon the trial that the book-

keeper of the appellant asked him before the sale if he had any more drafts out for cattle and that he told him that he had two, one for $400 and something and one for $100 and something, and it having been further testified to by the appellee Ferguson, and the witness Sandifer to whom the other draft of something more than $100 had been given for cattle, that they went with Beavers to see the manager of the appellant's stockyard after the appellee's draft had been returned unpaid and that Beavers then stated to the manager in their presence that he had stated to the bookkeeper before the auction sale, at a time when the manager was present, that these drafts were outstanding in favor of the appellee Ferguson and the witness Sandifer. Although Beavers was unable to recall as a witness at the trial that he mentioned the names of these two persons from whom he had bought the cattle represented by these two drafts, his testimony does disclose that the amounts of the drafts which he called to the attention of the bookkeeper in the presence of the manager were in the approximate sums of those given by him to said Ferguson and Sandifer, and there was no proof that there were other drafts then outstanding of those approximate amounts; and it was further shown that the manager of the appellant did not deny the statement of Beavers on the occasion of that visit when reminded by Beavers that he had given the bookkeeper such information at a time when he, the manager, was present, and before the sale. However, it was denied by the appellant at the trial that it had any knowledge of the fact that any cattle had been purchased from the appellee, and it was claimed that Beavers had four drafts outstanding instead of two on the day of this sale; that the appellant paid two drafts for him between the date of the sale of the Ferguson cattle at the stockyards on October 31, 1939, and November 8, 1939, the date on which payment of the Ferguson draft was refused. The record discloses, however, that at the time of the alleged notice to the appellant of the fact that the Ferguson and Sandi-

fer drafts were outstanding on the morning of October 31, 1939, before the sale, there was only one other draft given by Beavers then outstanding, and it was for the sum of $1,269.22 in favor of Tom Riddell of Canton, Mississippi, for the purchase price of cattle, and Riddell had previously arranged with the appellant for its payment in a telephone conversation some two or three days prior thereto; and these cattle were likewise sold on the said 31st day of October, 1939. It was therefore for the jury to determine, provided the case could be properly submitted to it for decision under the declaration as drawn, whether the appellant got the impression that Beavers had reference to this Riddell draft when he informed the appellant of the fact that he had two drafts outstanding, one for $400 and something and the other for $100 and something. This draft in favor of Riddell was paid on November 6, 1939, and charged by the appellant to the account of Beavers, and it could reasonably be inferred that the proceeds from the sale of the Riddell cattle were alone sufficient to pay his draft in the sum of $1,269.22 in view of the circumstance that Beavers was given an item of credit on that date in the sum of $1,352.15. While it is true that the appellant paid to Riddell a further sum of $1,288.29 on November 7, 1939, it was shown by the testimony of the appellant's manager that this sum represented the proceeds of sales of cattle which had been delivered to the stockyard by Riddell himself, and for which he was paid on that date, after he had come to the stockyard with the cattle and waited for his money, and which was paid by appellant's own check, and not by draft, "when we got through selling the cattle."

It is undisputed that the appellant received all of the proceeds of the sales of both the Ferguson and the Riddell cattle, and so far as the evidence discloses it may be inferred that such proceeds were sufficient to pay the purchase price due them; also, that the absence of any funds to the credit of Beavers on the day that the Ferguson draft was returned unpaid must have been due to the

fact that the appellant had applied a part of such proceeds to the payment of some other obligation held by it against Beavers, whereas the same should have been held in trust for the payment of this draft, if it be true that the appellant had notice that the purchase price of these cattle was unpaid.

In the case of Frizzell v. Rundle & Company, 88 Tenn. 396, 12 S. W. 918, 17 Am. St. Rep. 908, which is conceded by the appellant in its brief to announce the correct principle applicable to the case at bar, it was held that: "An auctioneer who, in the regular course of his business, receives mortgaged chattels from the mortgagor, and sells them for him on commission, and pays over the proceeds thereof, without notice, actual or constructive, of the mortgage, is not liable to the mortgagee as for a conversion of the goods, although the mortgagor acted fraudulently in the matter." And other cases are cited in its brief announcing the same principle. But, the contention of the appellant is that the proof in this record is insufficient to show that when the stockyard sold the cattle in question, through its auctioneer as a factor or commission merchant, it had any notice of the purchase-money lien then existing in favor of the appellee.

It is also contended that since the appellee knew at the time of the sale of the cattle to Beavers he was purchasing the same for resale, the seller cannot now assert that he held a purchase-money lien thereon at the time of the resale, even though the appellant may have known that the purchase price was paid. However, the case of Campbell Paint & Varnish Company v. Hall, 131 Miss. 671, 95 So. 641, holds that a seller of goods to a merchant for purpose of resale has a lien thereon for the unpaid purchase money while the goods remain in the hands of the first purchaser or one deriving title or possession through him with notice.

Section 2239, Code of 1930, reads as follows: "The vendor of personal property shall have a lien thereon for the purchase-money while it remains in the hands of the

first purchaser, or of one deriving title or possession through him, with notice that the purchase-money was unpaid.'' However, appellent contends (1) that it did not derive title or possession through Beavers or otherwise, and (2) that at the time the cattle were sold through its auctioneer it had no notice that the purchase money was unpaid. Responding to the first contention, it may be conceded that the proof fails to disclose that the appellant ever acquired title to the cattle from Beavers; since it did not purchase the same. It did have possession of them, however, at least as bailee, factor or auctioneer, at a time when the purchase-money lien could have been enforced against them, and then aided in the sale and disposition thereof with notice, according to the finding of the jury, that the purchase money was unpaid. Although this suit is not one to enforce such a lien under the statute, the cattle being in the hands of innocent purchasers at the time the suit was brought, yet the fact remains that if the appellant aided and abetted the action of Beavers at the auction sale in disposing of the cattle and in placing them into the hands of third persons against whom the lien could not be enforced, receiving a commission from the proceeds of the sale and diverting the remainder thereof to other purposes than a discharge of the lien with notice that such lien had not been satisfied, then it would be liable in an appropriate action for the value of the cattle in the conversion of which it thus participated.

The second count of the declaration charged in substance that on and prior to October 30, 1939, the defendant Beavers was engaged in buying cattle for the defendant, The Dixie Stock Yard, Inc., pursuant to an agreement between them, whereby Beavers would travel over the country locating and purchasing cattle and paying for them by giving drafts drawn by him on his said co-defendant in favor of the various persons from whom he purchased cattle, and which cattle so purchased would be delivered by the said Beavers to the co-defendant's place

of business, and that when these drafts were presented to his co-defendant for payment they would be paid; that in furtherance of the business so carried on by the defendants, Beavers purchased from plaintiff Ferguson the twelve head of steers and gave the draft in question for the purchase price thereof; that these steers were thereafter delivered at the place of business of the co-defendant, and that it "thereafter converted same to its own use, disposed thereof, and placed the same beyond the reach of the plaintiff, then well knowing that said defendant Beavers had not paid therefor, but had given a draft for the purchase price thereof . . . The Dixie Stock Yard . . . then well knowing that plaintiff had a purchase money lien on said cattle"; and said count further alleges that amount of the draft to be the sum of $423.50 in favor of the plaintiff, representing the purchase price of the steers, and also the refusal of the stockyard to pay the same.

The proof failed to establish an agency on the part of Beavers to buy cattle for the appellant as alleged (since he had a right to sell to whomsoever he pleased any cattle that he might purchase from their respective owners), unless it can be said that he and the appellant were engaged in a joint enterprise as to all cattle that he purchased and undertook to pay for with drafts drawn on the appellant, intending, as he says, at the time of purchase in such instances to deliver them at the stockyard for sale through the auction ring on payment of a commission to the appellant, in order to induce the payment of his drafts when presented, without regard to the want of any prior agreement in that behalf; nevertheless the proof does establish that all cattle so purchased by Beavers and paid for with drafts on the appellant were delivered at its place of business and that the appellant accepted the same, at least as bailee awaiting the resale thereof, and that the appellant thereafter participated in the conversion of the same in such manner as to place them beyond the reach of the plaintiff; and as heretofore

stated, we think that the testimony as to notice was sufficient to make an issue for the jury as to whether or not the appellant knew that the purchase price had not been paid, and especially in view of the fact that the record discloses that Beavers had been paying for the cattle, brought by him to the stockyard, by drafts drawn on the appellant. If the proof sufficiently establishes that the appellant participated in the conversion of the cattle and in defeating the purchase-money lien thereon, with notice thereof, then such proof should be sufficient to sustain a verdict rendered on a count of the declaration charging that the appellant itself received and converted the same to its own use with notice of the lien.

Section 521, Code of 1930, provides, among other things, that "If [a declaration] contains sufficient matter of substance for the court to proceed upon the merits of the cause, it shall be sufficient; and it shall not be an objection to maintaining any action that the form thereof should have been different." It is immaterial whether or not the defendant Beavers was employed by the appellant as its agent to purchase cattle pursuant to an agreement in that behalf, if the proof sustains the main ground of the declaration upon which liability was sought to be established; that is to say, that the appellant converted or disposed of the cattle, with notice at the time that a purchase-money lien existed thereon, and without having thereupon caused such lien to be discharged. And, as heretofore stated, we are of the opinion that proof of participation in a conversion, with notice of an existing lien on the property converted, is sufficient to establish liability under a count of the declaration charging the defendant itself with the conversion thereof.

From what we have said it follows that we do not think it was error to refuse the peremptory instruction as to the second count of the declaration. But the third count of the declaration proceeds upon the theory that the defendant Beavers purchased the cattle from the plaintiff and sold them to the appellant, without having paid

the purchase price thereof and with notice to the appellant that the purchase price was unpaid. It was error to submit the case to the jury under this count of the declaration since there was no proof that the cattle were sold to the appellant by the defendant Beavers.

The instructions granted in favor of the appellee as plaintiff in the court below which assume that Beavers parted with the title to the cattle by a sale thereof to the appellant were likewise erroneous; also the instruction to the jury that if it believed from the preponderance of the evidence in the case that any witness had knowingly, wilfully and corruptly testified falsely as to any material facts in the case, then the jury might disregard the testimony of such witness entirely. Metropolitan Life Ins. Co. v. Wright, 190 Miss. 53, 199 So. 289; Swanner v. State (Miss.), 2 So. (2d) 142.

Because of the errors above mentioned, the cause must be reversed and remanded.

Reversed and remanded.