CARTER WOOD SPECIALTY CO., Plaintiff-Appellee v DRUG & STORE FIXTURES, INC., et, Defendant-Appellant.

Ohio Appeals, 8th District, Cuyahoga County.

No. 18864.   Decided December 14, 1942.

Klein & Diehm, Cleveland, L. J. Farber, Cleveland, for plaintiff-appellee.

Karl J. Ertle, Cleveland, for defendant-appellant, Metropolitan Finance Co.

## OPINION

By MORGAN, J.

In July, 1940, Ernest Gross, one of the defendants, entered into a contract with another defendant, Drug & Store Fixtures Inc., by which the latter agreed for a consideration of $1600.00 to manufacture and to furnish to the former certain fixtures for a new drug store to be owned and operated by Gross at 12631 Lorain Ave., Cleveland, Ohio.

Gross paid $400.00 in cash on the signing of the contract and for the balance gave a note for $1344.00 dated July 24, 1940, and a chattel mortgage on the fixtures to defendant, The Metropolitan Finance Co., which agreed to finance the project. The amount of $144.00 was a charge of the Finance Company for its services. At the time the note and chattel mortgage were executed on July 24. 1940 the fixtures of course were not in existence. The chattel mortgage was not recorded until after the fixtures were manufactured and delivered to the purchaser.

The attorney and treasurer of Drug & Store Fixtures Inc., was also the attorney and president of Metropolitan Finance Co. The two companies had previously had about 15 inter-company transactions. Drug & Store Fixtures Inc. made purchases of lumber and paint for the fixtures and also made a contract with The Church & Home Equipment Company to manufacture the fixtures. Payments for the lumber and paint and also to the Church & Home Equipment Company were made by checks of the Metropolitan Finance Company.

Some time in October, 1940, the Finance Company found that it had paid out for these fixtures all of the amount it had agreed to furnish but the fixtures were not nearly completed. To secure the completion of the fixtures, Drug & Store Fixtures Inc., entered into an agreement with The Carter Wood Specialty Company the plaintiff herein, by which Drug & Store Fixtures Inc., agreed to deliver the uncompleted fixtures to the plaintiff for completion on agreed terms. Payment for the fixtures was to be cash on delivery.

The fixtures were completed by plaintiff in the early part of November, 1940. Some fixtures were delivered to the purchaser earlier but a substantial part of the fixtures had not been delivered when Carter, representing the plaintiff, met Rice, representing Drug & Store Fixtures Inc., and they agreed to settle for $600.00 plaintiff's claim for completing the fixtures.

At this meeting, Rice gave to Carter three Drug & Store Fixtures Inc., checks with plaintiff as payee, for $200.00 each. One was immediately payable and the other two were post-dated, one being dated November 22, 1940 and the other December 5, 1940. The first check for $200.00 was paid on presentation and the two post-dated checks were returned by the bank marked "no funds," and nothing has since been paid on these checks.

After receiving the three checks each for $200.00 the plaintiff delivered the balance of the fixtures to Gross.

At the time this action was filed, Gross, the purchaser of the fixtures, owed a balance of $509.00 on the consideration he had agreed to pay for the fixtures which was represented by the note he had signed and delivered to the Finance Company. He has since paid $509.00 to the Clerk of Courts to be held subject to the order of the Court in this case.

The question to be decided in this case is whether the plaintiff is first entitled to be paid out of this fund of $509.00 the balance still due it for completing the fixtures, or whether the Metropolitan Finance Company is entitled to all of the fund in payment of the balance due on its note and chattel mortgage.

It is conceded that the plaintiff, before surrendering possession, had a lien on the fixtures for the amount due it for labor and materials in completing the fixtures. The Finance Company contends that plaintiff's lien was lost by the delivery of the fixtures to the purchaser and that its note and chattel mortgage therefore is a prior lien.

The plaintiff's position is that inasmuch as it was induced to surrender possession of the fixtures by reason of the fraudulent representations and conduct of the defendants herein, it retains a lien for the amount owing it for the fixtures, either on the fixtures or on the fund paid into court by Gross, and that plaintiff's lien is prior to the lien of the Metropolitan Finance Company.

The facts on which the plaintiff relies to establish its lien are set forth in its petition and inasmuch as Drug & Store Fixtures Inc., is in default of answer, the allegations of the petition as against it must be taken as true.

Plaintiff's petition sets forth that it agreed with Drug & Store Fixtures Inc. to complete the fixtures with the understanding that plaintiff's bill would be paid in full before the fixtures would be released. That the two post-dated checks for $200.00 each were signed by the president of Drug & Store Fixtures Inc. and also by its treasurer who was also the president of the Finance Company and that the plaintiff was induced to accept the said post-dated checks by the representation of defendants that they were as good as cash.

That relying upon these representations that the checks were as good as cash, the plaintiff delivered the fixtures to the purchaser; that both Drug & Store Fixtures Inc., and the Metropolitan Finance Company had full knowledge of the manner in which the fixtures were released by the plaintiff and of the representations made to induce the plaintiff to accept the post-dated checks and to release the fixtures; that thereby the plaintiff has a lien on the fund paid into court for its unpaid bill, prior to the lien of the Metropolitan Finance Company.

The above allegations in the petition are to be taken as true as against Drug & Store Fixtures Inc., as it is in default of answer. The Metropolitan Finance Company has filed its answer in which it

denies that it had any contractual relations with the plaintiff and' denies that it had anything to do with any agreement between plaintiff and Drug & Store Fixtures Inc., by which the plaintiff was induced to accept two post-dated checks in part payment for the fixtures.

The trial judge found that the conduct of Drug & Store Fixtures Inc., in this case was fraudulent and that the plaintiff was induced by the fraudulent representations of Rice, representing Drug & Store Fixtures Inc., to accept the two post-dated checks and to deliver possession of the fixtures to the purchaser. The evidence supports this conclusion of the trial judge.

If this were a controversy between the plaintiff and Drug & Store Fixtures Inc., or even one between the plaintiff and the creditors of Drug & Store Fixtures Inc., it is our opinion that plaintiff having been fraudulently induced to surrender possession of the fixtures would have a lien for the balance due it on the fund paid into court by the purchaser. It is not necessary to decide whether or not plaintiff would retain a lien on the fixtures themselves inasmuch as the fund paid into court by the purchaser is more than sufficient to pay plaintiff's claim.

In the case of Reich v Triplet, 199 N. C. 678, where the controversy was between the claimant of a mechanic's or artisan's lien and the owner of an automobile, the fraud practiced was very similar to that in the present case. The first paragraph of the syllabus reads:

"Under the common law and the provisions of our statute, C. S. 2435, one who repairs personal property loses his lien thereon by voluntarily surrendering possession to the owner, but where an automobile has been repaired and the artisan or mechanic is induced to part with possession upon false and fraudulent representations made by the owner that his check for the payment of the repairs was good and that he had sufficient funds in the bank for its payment, and the mechanic relies thereon and surrenders possession of the car, he does not do so voluntarily, and unconditionally within the intent and meaning of the statute and the mechanic does not lose his lien for the value of the repairs done by him."

See also: McGill v Lumber Co. 111 Tenn. 552; 37 C. J. 336.

Even if it were held that plaintiff by surrendering possession of the fixtures had lost its right to a lien at law as between plaintiff and Drug & Store Fixtures Inc., by reason of the fraud of the latter company plaintiff would have an equitable lien on the fund paid into court by Gross representing the balance of the purchase price of the fixtures. (33 Am. Juris. 427).

The controversy in this case, between plaintiff and the Metropolitan Finance Co., presents a somewhat different question. If the Metropolitan Finance Co., had paid out its money **after** the fix-

tures had been delivered to Gross and had then recorded its chattel mortgage, without any notice or knowledge of plaintiff's lien, the lien of the Finance Company might in such a case be held to have priority over plaintiff's lien. But such are not the facts in this case.

The Metropolitan Finance Co. had paid out all of the money which it had agreed to furnish, not only before plaintiff delivered the fixtures to the purchaser, but even before the plaintiff had agreed with Drug & Store Fixtures Inc. to complete the fixtures. It is evident that at the time plaintiff agreed to complete the unfinished fixtures, the Metropolitan Finance Co. was just as much interested as was Drug & Store Fixtures Inc. in having the fixtures completed. The president of the Finance Company testified that he then knew that it was necessary that the fixtures be in the hands of the mortgagor before Metropolitan Finance Co., would have any right to record its chattel mortgage.

The president of the Finance Company testified further that when all of its money had been paid out and he realized that the fixtures were still in the process of manufacture, he had conversations with Gross, with Rice of Drug & Store Fixtures Inc., and also with Carter representing the plaintiff. Although the record does not show that the president of the Finance Company was present when the plaintiff agreed with Drug & Store Fixtures Inc., to complete the fixtures, he did know that such a contract had been made and he acquiesced in it.

Plaintiff's representative testified that he was not told about the note and chattel mortgage in the possession of the Finance Company until after he had surrendered possession of the fixtures by delivering them to the purchaser, and there was no evidence to the contrary.

The record does not show that the president of the Finance Company was present when the post-dated checks were delivered to the plaintiff. However, they were signed by him in blank as treasurer of Drug & Store Fixtures Inc., he at the same time being president of the Finance Company.

This court in determining the priorities of the claims on the fund in court, is exercising equitable jurisdiction.

"Courts of equity have general jurisdiction to adjust priorities among conflicting liens." (33 American Jurisprudence 438)

At the time the note and chattel mortgage were signed in this case by the mortgagor, the fixtures were not in the possession of the mortgagor, and in fact they were not then in existence. The chattel mortgage is therefore in the nature of a lien on after acquired property.

The rule as to the right acquired by a mortgagee in such a case is well stated in 10 American Juris. 851, as follows:

"A mortgage given to cover after-acquired property, covers such property only in the condition in which it comes into the hands of the mortgagor. If that property is already subject to mortgages or other liens at that time, the general mortgage does not displace them, although they may be junior to it in point of time. It attaches only to such interest as the mortgagor acquires."

The cases sustain the above statement. See U. S. v New Orleans Railroad, 12 Wallace 362, paragraphs 1 and 2 of the syllabus:

"1. A mortgage by a railroad company covering all future acquired property attaches only to such interest therein as the company acquires subject to any lien under which it comes into the company's possession.

2. If the company purchases property subject to a lien for the purchase money, such lien is not displaced by the general mortgage."

The court held that the lien for the purchase money would take precedence of the general lien on after-acquired property, even if the former lien were not registered or recorded. The court said on page 365:

"And in such cases a failure to register the mortgage for purchase money, makes no difference. It does not come within the reason of the registry laws. These laws are intended for the protection of subsequent, not prior, purchasers and creditors."

See also, Fosdick v Schall, 99 U. S. 235; Meyer v Car Company, 102 U. S. 1; Note in 109 Amer. State Rep. 513.

In Schnirring v Stubbe, 117 Minn. 441, the court said, (page 444):

"There are a number of cases dealing with the question of liens on after-acquired property, or property to be manufactured or produced. Whether such property is acquired by purchase or is manufactured or produced would not seem material. It is essentially after-acquired property. In either case a mortgage thereon before the property is acquired attaches only to such interest therein as the mortgagor had at the time the property is acquired by him. If by the contract under which the mortgagor acquires title to the property a purchase money lien is reserved, or is then given or created, his title is limited thereby and any prior mortgage given by him thereon is likewise limited and is subject thereto."

In the above cases the courts gave preference to an unrecorded later lien over a mortgage covering after-acquired property which had been executed and recorded on a prior date. In the present case the chattel mortgage was not recorded until after the happening of

the events which gave plaintiff a lien. The priority of the chattel mortgage is to be determined as of the date of the delivery of the fixtures to the purchaser and of the recording of the mortgage and not as of the date of its execution before the fixtures were manufactured.

It is not difficult to determine where the equities of this case lie. The plaintiff, in completing the fixtures, was acting for the benefit of both Drug & Store Fixtures Inc., and Metropolitan Finance Co., which had paid out all of the money it had agreed to advance in financing the fixtures, well knowing that it would not have a chattel mortgage which could be recorded until the fixtures were completed. It would be a travesty on justice under these facts to give priority to the Finance Company as against plaintiff.

It is therefore the decision of this Court that the plaintiff be first paid out of the fund in the hands of the Court the sum of $400.00 with interest on $200.00 from November 22, 1940 and with interest on $200.00 from December 5, 1940; that the balance of the fund, after the payment of court costs, be paid to Metropolitan Finance Company on its chattel mortgage.

Inasmuch as Gross, the purchaser, has paid his full contract price for the fixtures, the Metropolitan Finance Company is enjoined from collecting, or seeking to collect any further payments from said Gross on its note and chattel mortgage.

LIEGHLEY, PJ., and SKEEL, J., concur.