TRENTON LUMBER COMPANY *v.* BOLING, et al.

No. 40283 February 11, 1957 92 So. 2d 440

*Byrd, Wise & Smith,* Jackson, for appellant.

*W. E. McIntyre, Jr.,* Brandon, for appellees.

KYLE, J.

This appeal involves three separate suits filed by J. B. Boling and others in the Circuit Court of Rankin County on September 22, 1952, for the enforcement of purchase money liens on undressed pine lumber and poplar lumber, which had been delivered by the plaintiffs to J. M. Holmes, Jr., the principal defendant, at his planing mill yard in the Town of Brandon.

The suits were begun by affidavits filed under Section 341, Code of 1942; and in their affidavits the affiants alleged that the lumber was in the possession of J. M. Holmes, Jr., at his planer mill site in the Town of Brandon, and that a portion of the lumber was stacked at the east end of the dry kiln building located on said premises, and a portion thereof inside the dry kiln building. The affiants claimed a lien upon the lumber for the unpaid purchase price thereof in the amounts stated in the affidavits. The affiants also alleged in their affidavits that the Trenton Lumber Company, a corporation, domiciled in Hinds County, was asserting some sort of claim to the lumber, the basis of such claim being unknown to the affiants.

The plaintiff, J. B. Boling, in his affidavit claimed a lien on 7,160 board feet, lumber scale, of undressed pine lumber, and 3,691 board feet of poplar lumber, for the sum of $631.54. The plaintiffs, R. M. Hogan and C. E. Vance, doing business as Hogan's Sawmill, in their affidavit, claimed a lien of 4,097 board feet of undressed pine lumber, for the sum of $245. The plaintiffs, R. L. Harpe and W. F. Harpe, doing business as Harpe Brothers, claimed a lien on 20,538 board feet of undressed pine lumber and 598 board feet of poplar lumber, for the sum of $1,300.34. All of the above mentioned lumber ex-

cept·a small amount included in the claim of J. B. Boling; had been delivered to the Holmes Planer Mill during the week immediately preceding the date of the filing of the affidavits.

The Trenton Lumber Company filed an answer to each of the affidavits, and in its answers denied that the plaintiffs had sold and delivered to the defendant, J. M. Holmes, Jr., lumber in the amounts stated in the plaintiffs' affidavits. The Trenton Lumber Company admitted that some lumber had been sold to Holmes, but denied that it had any knowledge of what the plaintiffs had sold to him; and the company demanded strict proof of the amount sold by the plaintiffs. The Trenton Lumber Company then averred in its answer that it was the holder of a mortgage deed of trust executed by Holmes on May 21, 1952, to secure an indebtedness due and owing by Holmes to the Trenton Lumber Company at that time, and also future advancements; that said deed of trust covered all lumber or logs stacked on the Holmes planing mill yard and such lumber or logs as might be placed thereon during a period of three years from the date of said instrument; that the deed of trust had been duly recorded; and that the plaintiffs' claims, if proved, were subordinate to the Trenton Lumber Company's deed of trust lien on said lumber. A copy of the deed of trust and an itemized statement of the account secured thereby were attached to the answer. The Trenton Lumber Company also averred in its answer that it had purchased from certain laborers, who had performed labor on said lumber, their liens, which were prior to the plaintiffs' purchase money liens, and, in the event it should be found that the plaintiffs had a lien on said lumber, the Trenton Lumber Company was entitled to have the lien of the laborers in its hands adjudged to be prior to the plaintiffs' purchase money liens.

J. M. Holmes, Jr., filed answers to the plaintiffs' affidavits, and in said answers stated that he was in-

debted to the plaintiff in the amounts alleged to be due in the plaintiffs' affidavits, and that he was also indebted to the Trenton Lumber Company as alleged in its answer; that he was without knowledge of the respective rights of the parties; and he therefore asked that the court adjudicate the issue between the parties as to the order of priority of their respective liens.

The three cases were consolidated and tried before the circuit judge without a jury at the July 1955 term of the court. The cases were submitted upon an agreed stipulation or statement of facts, which showed that the plaintiffs had sold and delivered to J. M. Holmes, Jr., during the week ending September 20, 1952, the lumber described in the plaintiffs' affidavits, and that the lumber stacked outside the dry kiln and levied upon by the sheriff was the lumber delivered by the plaintiffs to Holmes. It was also shown that the lumber involved in the three suits had been sold by the sheriff sometime during the month of February 1953 under an order of the court, and that the gross proceeds received from the sale amounted to $1,624.03. It was also shown in the agreed statement of facts that, prior to May 21, 1952, the Trenton Lumber Company had advanced funds to J. M. Holmes, Jr., for the purchase of lumber and the payment of the expenses of his mill operations; and that Holmes had executed a mortgage deed of trust on May 21, 1952, in favor of the Trenton Lumber Company to secure the payment of the indebtedness then existing, which amounted to $22,000, and also ''future advances not to exceed an outstanding balance of $25,000 at any time.'' It was also shown that the amount due by Holmes to the Trenton Lumber Company on May 21, 1952, was $23,597.54, and that additional funds were advanced to Holmes thereafter as shown on the account filed with the Trenton Lumber Company's answer for the purchase of lumber, and for the payment of employees and other operating expenses.

It was further stipulated, "that the Trenton Lumber
Company did not have notice that the lumber delivered
by the plaintiffs in these three suits had not been paid
for until the suits were filed on the 22nd day of September
1952. However, it is the general custom in the trade,
in making purchases from sawmill operators, that the
lumber delivered during the week is paid for at the
end of each week and not customarily paid for at the
time of actual delivery to the purchasing point." It
was also stipulated that at the end of the week beginning
Monday, September 15, 1952, Holmes was in the
hospital and could not pay off his employees, and that
the Trenton Lumber Company, through its subsidiary,
A. Tindall, Inc., advanced to Holmes' wife the sum of
$951.63 to enable her to pay off the employees; and that
the Trenton Lumber Company took from each employee
an assignment of his lien on account of labor and services
rendered prior to September 20, 1952; that the assignments
were made first to A. Tindall, Inc., and were
then assigned by Tindall to the Trenton Lumber Company.

The court found that the lumber stacked outside the
dry kiln was the lumber which had been delivered by the
plaintiffs to J. M. Holmes, Jr., as alleged in the plaintiffs'
affidavits, and that the lumber had not been paid
for. The court found that the Trenton Lumber Company
had been doing business with J. M. Holmes, Jr., for a
long period of time, and was charged with notice of the
general custom in the lumber trade, that when rough
lumber is delivered to the planing mill by small mill
operators, the lumber delivered each week is paid for at
the end of the week and is not customarily paid for at
the time of the actual delivery. The court found that
the plaintiffs had purchase money liens on the lumber
seized under the writs issued after the filing of the
plaintiffs' affidavits, and that the plaintiffs' purchase
money liens were superior to the deed of trust lien of

the Trenton Lumber Company. The court found that, "The laborers' claims, which were paid by Tindall, Inc., and assigned to the Trenton Lumber Company, constituted no liens whatsoever on the lumber delivered by the plaintiffs to J. M. Holmes, Jr., which lumber was never mingled with any other lumber of J. M. Holmes, Jr." And the court ordered that the expenses incurred in selling the lumber, the sheriff's fees and the court costs be deducted from the $1,624.03 received for the lumber, and that the balance of the proceeds of the sale be paid over to the plaintiffs.

From that judgment the Trenton Lumber Company has prosecuted this appeal.

The first point argued by the appellant's attorneys as ground for reversal of the judgment of the lower court is, that the court erred in holding that the vendors' liens of the appellees were superior to the lien of the appellant's chattel mortgage deed of trust. And the appellant's attorneys cite in support of their contention the case of Tabb v. People's Bank & Trust Company et al., 160 Miss. 22, 133 So. 137.

But we think the decision in the Tabb case is not controlling here. In the Tabb case, the lumber delivered by the plaintiff to Holman had been mingled with other lumber on Holman's lumber yard and had been disposed of, and the plaintiff sought to hold the bank and the Nettleton Lumber Company liable for its conversion. It was not shown that the bank or the Nettleton Lumber Company had notice of the existence of the vendor's lien; and the court held that the bank and the Nettleton Lumber Company were not charged with notice of facts that were only brought to the attention of Holman.

In the cases that we have here, the proceedings were begun for the enforcement of the appellees' statutory liens on lumber which had not been paid for and which was still in Holmes' hands and in the same condition that it was in when it was unloaded on Holmes' yard.

The lumber could be readily identified as the lumber which the appellees had sold to Holmes and for which they had not received payment.

Section 337, Code of 1942, provides that: "The vendor of personal property shall have a lien thereon for the purchase money while it remains in the hands of the first purchaser, or of one deriving title or possession through him, with notice that the purchase money was unpaid."

▆▆ ▆ The statute does not confer on the vendor a mere right to acquire a lien on the property by seizing it under judicial process while in the hands of the first purchaser. The statute creates a lien on the property in favor of the vendor for the unpaid purchase money from the time of its sale to continue as long as it remains in the hands of the first purchaser, or one deriving title or possession through him, with notice that the purchase money was unpaid.

This court has held in several cases that a vendor of personal property has a lien on the property for the unpaid purchase money while the property remains in the hands of the first purchaser, or of one deriving title or possession through him with notice that the purchase price was unpaid, even though the property may have been sold to such purchaser for resale. See Campbell Paint & Varnish Co. v. Hall, 131 Miss. 671, 95 So. 641; Dixie Stock Yard, Inc., v. Ferguson, 192 Miss. 166, 4 So. 2d 724; Dorsey et al. v. Latham, 194 Miss. 253, 11 So. 2d 897.

▆▆ ▆ It is argued, however, that title to the lumber involved in these cases passed to Holmes when the lumber was delivered to him on the yard, and that the lien of the appellant's deed of trust which had been duly recorded attached itself to the lumber immediately, and being prior in point of time, was superior to the vendors' liens of the appellees. But we think that argument is unsound. Holmes acquired title to the lumber sub-

pect to the appellees' purchase money liens; and the appellant's deed of trust lien attached itself to the lumber in the condition in which it came into Holmes' hands.

The rule is that a mortgage covering all after acquired property attaches only to such interest therein as the mortgagor acquires, subject to any liens under which it comes into the mortgagor's possession.

"A mortgage given to cover after acquired property covers such property only in the condition in which it comes into the hands of the mortgagor. If that property is already subject to mortgages or other liens at that time, the general mortgage does not displace them although they may be junior to it in point of time. It attaches only to such interest as the mortgagor acquires. * * * In such cases, the first mortgagee does not hold the position of a purchaser or third person within the meaning of the recording acts and is not such a creditor as is protected by them, and a failure to register a mortgage given for the purchase price of the after acquired proverty makes no difference." 10 Am. Jur., 851, Chattel Mortgages, par. 205. See also United States v. New Orleans & O. R. Co., 12 Wall. (U. S.) 362, 20 L. Ed. 434; Myer v. Western Car Co., 102 U. S. 1, 26 L. Ed. 59; Bear Lake Irrigation Co. v. Garland, 164 U. S. Rep. 1, 41 L. Ed. 327; Carter Wood Specialty Co. v. Drug & Store Fixtures (Ohio App.) 38 Ohio L. Abs 309, 50 N. E. 2d 188; Thurmond v. International Harvester Co. (Tex. Cir. App.) 166 S. W. 2d 742; Hunter v. Scruggs Drug Store (C. C. A. 4th) 113 F. 2d 971.

 █ The appellant's theory that a mortgage deed of trust lien on after acquired property has priority over a vendor's unrecorded purchase money lien was thoroughly considered and rejected by the Supreme Court of the United States in the case of United States v. New Orleans & O. R. Co., 12 Wall. (U. S.) 362, 20 L. Ed 434. In that case it appeared that a railroad company had executed a general mortgage on all its property, in-

cluding after acquired property, and that after the execution of the mortgage the railroad purchased two locomotives and ten cars and simultaneously with the sale gave a bond for the purchase money wherein it was stipulated that the seller should have a lien therefor upon the property sold. The Court held that the lien for the purchase money was a prior lien on the locomotives and cars, even though the mortgage for the purchase money had not been registered or recorded, since the lien of the general mortgage attached only to such interest in the property as the mortgagor acquired. The Court in its opinion in that case said:

"The appellants contend, in the next place, that the decision upon the facts was erroneous; that the mortgages, being prior in date to the bond given for the purchase money of these locomotives and cars, and being expressly made to include after acquired property, attached to the property as soon as it was purchased, and displaced any junior lien. This, we apprehend, is an erroneous view of the doctrine by which after acquired property is made to serve the uses of a mortgage. That doctrine is intended to subserve the purposes of justice, and not injustice. Such an application of it as is sought by the appellants would often result in gross injustice. A mortgage intended to cover after acquired property can only attach itself to such property in the condition in which it comes into the mortgagor's hands. If that property is already subject to mortgages or other liens, the general mortgage does not displace them, though they may be junior to it in point of time."

The appellant's attorneys argue, however, that Section 851, Code of 1942, provides that a deed of trust or chattel mortgage on after acquired property executed in conformity with the provisions of that act, "shall be a valid lien against all creditors of the grantor," and that the appellees were creditors of Holmes within the

meaning of Section 851 when the writs in these cases were issued and their liens were therefore subordinate to the appellant's mortgage deed of trust. But we think the appellant's contention on this point is unsound. If the Legislature had intended that a deed of trust or chattel mortgage on after acquired property, executed in conformity with the provisions of Section 851, supra, should have priority over the vendor's lien for the unpaid purchase price of such property, the Legislature would have so provided; and Section 851 contains no provision to that effect.

Section 337, Code of 1942, was enacted in its present form as Section 3079, Code of 1906. It has remained unchanged as a part of the statute law of Mississippi for a period of more than fifty years; and there is no reason to believe that the Legislature intended by the enactment of Section 851, supra, to subordinate the vendor's lien created by Section 337 to the lien of a prior chattel mortgage on after acquired property executed under authority of Section 851, and thereby permit the holder of such prior chattel mortgage to take property that has not been paid for, while still in the hands of the first purchaser, and appropriate it to the payment of the chattel mortgage indebtedness and thereby defeat the vendor's purchase money lien.

When Holmes executed the mortgage deed of trust covering after acquired property on May 21, 1952, Holmes had a right to execute such instrument. But, when the appellant accepted that instrument, the appellant was charged with notice of the provisions of the statute, that "the vendor of personal property shall have a lien thereon for the purchase money while it remains in the hands of the purchaser, or of one deriving title or possession through him, with notice that the purchase money was unpaid."

The appellant was familiar with Holmes' method of financing his planing mill operations. The appel-

lant had been advancing money to Holmes for a long period of time to provide funds for the purchase of lumber and the payment of expenses incurred in the operation of the planing mill. The trial judge found that the appellant was charged with notice of the general custom of the lumber trade that planing mill operators, such as Holmes, paid for rough lumber delivered at the planing mill by small mill operators at the end of the week, and not customarily at the time of its actual delivery at the mill site. The appellant was under no contractual obligation to the appellees to let Holmes have money to pay for the lumber which the appellees had delivered to him during the week of September 15, 1952; but, in view of the facts stated above, the appellant was in no position to claim that it had no notice that the lumber involved in these cases had not been paid for, and that it had a right to take the lumber and apply it on Holmes' indebtedness to the appellant without paying the appellees for the lumber. The appellees did not lose their purchase money liens on the lumber by unloading it on the mill yard and waiting until the end of the week to be paid for it; and when Holmes failed to pay them for the lumber at the end of the week, they had a right to have the lumber seized for the enforcement of their purchase money liens.

There was no error in the holding of the trial judge that the appellees' liens were superior to the lien of the appellant's chattel mortgage deed of trust.

 It is next argued that the trial judge erred in his holding that the sawmill employees' liens in the hands of the appellant were inferior to the appellees' purchase money liens. But we think there is no merit in this contention. Holmes' employees had performed no service in the production of the rough lumber involved in these three cases.

The judgment of the lower court is therefore affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Lee* and *Holmes, JJ.,* concur.